STEPHENS, Appellant, *v.* NACEY, Respondent.

(No. 3,312.)

(Submitted May 26, 1913. Decided June 14, 1913.)

[133 Pac. 361.]

*Election   Contests—Trial—Delay—Jurisdiction—Statement   of Contest—Sufficiency.*

Election Contests—Trial—Delay—Jurisdiction—Erroneous Dismissal.
    1.   Where an election contest had been instituted within twenty days after the canvassers made their return (Rev. Codes, sec. 7238), the jurisdiction thus obtained of it was not ousted by neglect of the district judge to "thereupon order a special session or term of such court" on a day to be named by him (sec. 7241), or by error committed in failing to convene court "at the time and place designated" (sec. 7244), such latter sections being not mandatory but directory only.

Same—Trial—Delay—Nonaction by Contestant—Effect.
    2.   Mere nonaction on the part of contestant after filing his statement of contest could not be construed as an abandonment of it, so as to warrant dismissal for want of prosecution, where the district judge, though failing in the performance of his duty in the premises, did not refuse to call a special term of court, but, on the contrary, assured his counsel that he would do so.

Same—Statement of Contest—Conclusions.

     3. An allegation in the statement of contest that contestee's name was not rightfully on the official ballot was not only a bare conclusion of the pleader, but did not, under section 7234, Revised Codes, constitute a ground of contest.

Same—Statement of Contest—Insufficiency—Irregularities—Prejudice.

     4. Alleged malconduct on the part of election judges in omitting to certify to the number and names of the persons who voted, and the names of candidates and the number of votes received by each, constituted an irregularity which, in the absence of facts from which it might be inferred that contestee suffered prejudice, was insufficient to warrant rejection of the vote cast at the particular polling-place.

Same—Statement of Contest—Fraud—Sufficiency.

     5. An allegation in a statement of contest that the election judges were guilty of malconduct in "that they pretended and represented and returned" to the board of canvassers that a certain number of votes had been cast for contestee at a particular polling-place, "whereas in truth and in fact" no votes had been cast for him at such place, if intended to charge fraud on the part of the election judges, *held*, to state a cause of action, though perhaps open to special demurrer.

Same—Statement of Contest—Sufficiency.

     6. The allegation that contestee received a certain number of votes at a polling-place cast by persons who at the time were not residents of the state "but lived upon and within an Indian reservation, in said county, and were not in any respect qualified electors," *held* to state a ground of contest.

*Appeal from District Court, Valley County; J. Miller Smith, a Judge of the First Judicial District, presiding.*

ACTION by James R. Stephens against Patrick Nacey. From a judgment of dismissal of an election contest, contestant appeals. Reversed and remanded for further proceedings.

*Messrs. Norris, Hurd & Lewis,* for Appellant, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

In behalf of Respondent, *Messrs. Purcell & Horsky,* and *Mr. John L. Slattery,* submitted a brief; *Mr. R. R. Purcell* and *Mr. Antone Horsky* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election of 1912, Jas. R. Stephens was the Republican nominee for the office of sheriff in Valley county. The county canvassing board declared Patrick Nacey elected sheriff, and on December 2 Stephens filed his statement of contest. The clerk of the court immediately notified Hon. Frank

N. Utter, one of the judges of the twelfth judicial district, but nothing whatever was done by Judge Utter, and on December 24 Stephens disqualified him. On January 2 Judge Utter made an order transferring the cause to that department of the district court of Valley county presided over by Hon. J. W. Tattan. On January 3 Judge Tattan made an order calling a special term of court for January 18, and citation was issued and served. On January 17 the contestee appeared by demurrer and also filed an affidavit disqualifying Judge Tattan. Judge Tattan thereupon made an order calling in Judge Ewing, of Great Falls, and continuing the cause to January 27. On January 25 contestee filed his affidavit disqualifying Judge Ewing, and on the same day Judge Utter made an order calling in Judge Clements, of Helena. On January 26 Judge Clements, by telegram sent from Helena, directed the clerk to enter an order continuing the cause to February 6, and this direction was obeyed. On February 1 contestant disqualified Judge Clements, and on the same day Judge Utter made an order continuing the cause to February 11 and calling in Judge J. Miller Smith, of Helena. On February 11 Judge Smith opened court and called this proceeding. Contestee thereupon withdrew his demurrer and filed a motion to dismiss, upon the ground that a special term was not called by Judge Utter, and upon the further ground that Judge Tattan at chambers continued the cause from January 18 to January 27—a date more than twenty days from January 3, the day upon which the order calling the special term was made. In support of this motion certain evidence was received and certain evidence offered by contestant was rejected, contestee's motion was sustained and the proceedings dismissed. From the judgment of dismissal contestant appealed.

1. Section 7241, Revised Codes, provides that upon the state-
[1]  ment of contest being filed, the clerk shall inform the judge, who "shall thereupon order a special session or term of such court to be held at the courtroom, on some day to be named by it (him), not less than ten nor more than twenty days from

the date of such order, to hear and determine such contested election.''

Section 7244 provides: ''The court must meet at the time and place designated, to determine such contested election, and shall have all the powers necessary to the determination thereof. * * * ''

In *Curry* v. *McCaffery, ante,* p. 191, 131 Pac. 673, we held that it was not intended to limit the special term of court to twenty days and that adjournments ·for more than twenty days did not oust the court of its jurisdiction. We further recognized the rule for which counsel for respondent now contend, that ''the principal object sought to be attained by the enactment of statutes for contesting elections, is to secure a speedy trial and determination of all such contests.'' We may agree with counsel, also, that the word ''thereupon,'' as used in section 7241 above, means ''immediately'' or ''at once,'' and that the legislative command was intended to be obeyed. The failure or refusal of Judge Utter to act is unexplained. The duty imposed by section 7241 is so plain that failure or refusal to comply with the requirements imposed would seem to be inexcusable. But conceding that error was committed in the failure of Judge Utter to call a special term of court immediately upon receiving notice that the statement of contest was filed, and that error was committed again in the failure of the court to convene in special term ''at the time and place designated'' in the order which Judge Tattan made calling the special term, the question arises: Did such errors operate to oust the court of jurisdiction? To answer this inquiry in the affirmative would result in clothing a district judge with plenary power by his own wrongful conduct to deny to a litigant the right to be heard in a court constituted for the purpose of administering judicial remedies—a power which we refuse to recognize as being lodged in any judicial officer. Since the days of Magna Charta it has been the proud boast of the English people that their courts are open to everyone to afford a speedy remedy for every injury to person, property or character, and to administer right and justice without sale, denial

or delay. That charter of liberty, deemed essential to the very existence of free government, was a part of the inheritance of the original American colonies, has been adopted in the later states, and finds expression in section 6, Article III of the Constitution of Montana.

Section 7238 limits the right of the contestant in permitting him but twenty days after the canvassers make their return within which to institute his contest; but the district court has jurisdiction of the subject matter—election contests—and when a statement of contest has been filed within the limited time allowed, the court has jurisdiction of the subject matter of that particular contest. To deny to a contestant the right to be heard because the trial judge failed or refused to discharge his duty would set a premium upon official misconduct, impose a penalty upon a litigant for the judge's wrongful acts, and in its ultimate result would reach the very acme of injustice and oppression. Without stopping to consider whether it is within the power of the legislature, in view of the guaranty of our Constitution above, to enact a statute which could be construed to warrant such absurd result, it is sufficient to say that our legislature has not undertaken the task. The portion of the Codes dealing with election contests defines the duty of the contestant, the clerk, judge and court, but it does not impose any penalty upon the litigant for the derelictions of others.

In *Hagerty* v. *Conlan,* 15 Cal. App. 643, 115 Pac. 762, it was held that the provisions of section 1118, California Code of Civil Procedure, which are the same as those in our section 7241 above, are directory only. In *Busick* v. *Superior Court,* 16 Cal. App. 499, 118 Pac. 481, the same rule was applied to the provisions of section 1121, California Code of Civil Procedure, which are the same as those found in our section 7244 above; and in *Moore* v. *Superior Court,* 20 Cal. App. 299, 128 Pac. 946, the doctrine of the *Busick Case* was reaffirmed. With that conclusion we agree. In view of section 6315, Revised Codes, giving to each party to a proceeding the right to disqualify judges by filing disqualifying affidavits, to hold the provisions of sections 7241 and 7244 mandatory would be to defeat the very

purpose of the statute; for in practically every instance the contestee, by disqualifying the presiding judge on the eve of the day set for the hearing, could prevent a trial "at the time and place designated" in the order calling the special term and thereby oust the court of jurisdiction, if the terms of section 7244 are to be carried out strictly according to the language employed and not otherwise.

Our conclusion upon this branch of the case is that the district court of Valley county had jurisdiction of the subject matter and of the parties; that such jurisdiction was not ousted by any errors committed by the court or judges, and that in dismissing the proceeding the court erred.

Neither can the jurisdiction of the court be made to depend [2] upon the action or nonaction of the contestant after he has filed his statement of contest and while the proceeding is pending. His proceeding might be dismissed for want of prosecution; but if the evidence offered by contestant upon the hearing to dismiss be true—and for the purposes of this appeal it is taken to be true—he cannot be charged with having abandoned his contest or with responsibility for Judge Utter's failure to act. Contestant might have applied to this court for a writ of mandate; but to secure such writ it is the general rule that the applicant must allege that he has made demand for the performance of the duty and that such demand was refused. By his offered evidence contestant sought to prove that Judge Utter did not refuse to call a special term of court, but repeatedly assured counsel for contestant that he would call such special term. Of course, a time would come when counsel would not be justified in relying upon such assurances further, and would be called upon to take appropriate steps to compel the performance of the duty by the judge, but we think there was not such delay on contestant's part in this instance as would justify the application of such an extreme remedy as dismissal for want of prosecution. We do not think the proceeding was dismissed for that reason, but, if it was, there was exhibited a very clear case of abuse of discretion.

2. But it is insisted that even though the reason for the rul-
ing may have been erroneous, the right result was reached,
since, it is contended, the statement of contest does not state
a cause of action. The statement sets forth at length the facts
concerning the division of Valley county into election precincts
and the subdivision of certain of the precincts into "polling-
places." It gives the vote received by contestant and con-
testee at each polling-place, except polling-place No. 1, Saco
precinct and Poplar precinct.

The first alleged ground of contest is that the contestee's
[3] name was not rightfully on the official ballot. This is not
a ground of contest (Rev. Codes, sec. 7234), and even if it were,
the statement does not contain any facts, but the bald conclu-
sion.

The second ground of contest is not couched in very terse
or explicit language, and we are unable to agree with counsel
for contestee as to its meaning. It charges "malconduct and
[4] misconduct" on the part of the election judges at polling-
place No. 1, Saco precinct, in failing to certify the returns as
required by section 519, Revised Codes. No facts are stated
from which it can possibly be inferred that the failure of the
judges of election to certify to the number and names of the
persons voting, and the names of candidates and the number
of votes received by each, worked any prejudice to contestant,
and such irregularity is not sufficient to warrant rejection of
the vote of that polling-place. The statute itself so declares.
(Secs. 520, 591, 606, and 7235, Rev. Codes.) But the foregoing
[5] is not all of the statement of the second ground of contest.
It is further alleged that "said board of judges of election and
said judges of election of said polling-place were guilty of
malconduct and misconduct in the discharge of their duties
in that they pretended and represented and returned to the
board of canvassers of said Valley county, Montana, the fact
that ninety-seven (97) votes had been cast and voted at said
election for said defendant, Patrick Nacey, whereas in truth
and in fact no votes were cast in said polling-places of said
precinct for said defendant, Patrick Nacey." If by this alle-

gation it is intended to charge fraud on the part of the election judges and to assert that contestee did not receive any votes at all in polling-place No. 1 of Saco precinct, but that he received credit for 97 votes which were not cast, and that these 97 votes are necessary to justify the canvassers in their return, then this statement states a cause of action. If, however, it was intended to charge that Nacey received 97 votes in polling-place No. 1, Saco precinct, but that such votes should not be counted for him because of the failure of the election judges to certify the returns, then this count does not state facts sufficient to constitute a cause of action. This count of the statement may be open to a special demurrer, but we are not prepared to say that the pleader did not mean what the language employed fairly expresses.

3. The third ground of contest relates to votes cast at Poplar precinct upon the Fort Peck Indian Reservation. Contestant [6] alleges that the 45 votes received by the contestee at Poplar "were voted and cast by persons who at the time of voting and casting said votes were not residents of the state of Montana, but each and all of said persons, so casting and voting said votes, lived upon and within the Fort Peck Indian Reservation, in said county, and were not in any respect qualified electors." If it be true that votes were cast for contestee by persons who were not residents of Montana and "not in any respect qualified electors," then, of course, such votes should be deducted from the total vote credited to contestee. The canvassers' returns show that Stephens received 1,084 votes and Nacey 1,110 votes. Contestant alleges that he received 1,034 legal votes and that contestee received 968 legal votes, aside from the votes received by contestee from polling-place No. 1, Saco precinct, and from Poplar precinct; so that, to affect the result, it is incumbent upon contestant, under section 7237, Revised Codes, to show that from these two voting places his opponent Nacey received credit for more than 76 votes to which he was not entitled. Under the liberal rules of pleading in force in this state, we think the contestant has stated facts sufficient, if true, to show that Nacey was credited with

97 votes received at polling-place No. 1, Saco precinct, and 45 votes at Poplar precinct, to which he was not entitled, and therefore that a different result will follow, if he is able to prove these allegations.

The judgment is reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.