THOMPSON, APPELLANT, *v.* CHAPIN, RESPONDENT.

(No. 5,209.)

(Submitted October 10, 1922.  Decided October 13, 1922.)

[209 Pac. 1060.]

*Elections — Primary   Elections — Laws   Governing — Election Judges—Failure to Perform Duty—Effect on Ballot.*

Primary Elections Governed by General Election Laws.
    1.  The general laws governing elections are applicable to primary nominating elections.

Same—Failure of Judges of Election to Perform Duty—Effect.
    2.  The right of an elector to vote at an election cannot be defeated by the failure of election officials to perform an administrative duty in the conduct of the election specifically imposed upon them.

Same.
    3.  Ignorance, inadvertence or even intentional wrong on the part of election judges, in the absence of fraud or collusion, does not disfranchise an elector and much less an entire precinct.

Same—Failure of Election Judges to Require Electors to Sign Registry Book—Effect.
    4.  Under the rules above, *held* that failure of the election judges of a precinct to require the electors to sign the registry books

---

    1.  Constitutional or statutory provisions relating to elections as applicable to primary elections, see notes in 2 **Ann. Cas.** 251; 16 **Ann. Cas.** 251; **Ann. Cas.** 1913A, 702; **Ann. Cas.** 1918E, 79.

[64 Mont. 376.]

before voting at a primary election, was the fault of the judges and not of the electors, and that therefore their votes were legal and properly counted.

Same—Refusal to Sign Registry Book Renders Ballot Illegal.

5. *Obiter:* Where an elector refuses to comply with the request of the election judges that he sign the registry book before casting his vote and he is thereupon permitted to vote, the vote cast is illegal and need not be counted.

*Appeal from District Court, Rosebud County; George A. Horkan, Judge.*

PRIMARY ELECTION contest by C. E. Thompson against George M. Chapin. From a judgment dismissing the contest, contestant appeals. Affirmed.

*Messrs. Young & Young* and *Messrs. Stewart & Brown,* for Appellant, submitted a brief; *Mr. H. G. Young* and *Mr. John G. Brown,* of Counsel, argued the cause orally.

Appellant contends that the primary election is not an election. All of the states, so far as we have been able to discover, have followed this rule. This has become so well established in the jurisprudence of this country that so eminent a work as Ruling Case Law holds that the ruling cases of this country are to the effect that a primary is not held to afford an elector as such a chance to exercise his right of suffrage, but instead is but an opportunity to participate in a particular political proceeding. (9 R. C. L. 1076; *Ladd* v. *Holmes,* 40 Or. 167, 91 Am. St. Rep. 457, 66 Pac. 714; *State* v. *Nichols,* 50 Wash. 508, 97 Pac. 728; see, also, *De Walt* v. *Bartley,* 146 Pa. St. 529, 28 Am. St. Rep. 814, 15 L. R. A. 771, 24 Atl. 185; *State* v. *Anderson,* 100 Wis. 523, 42 L. R. A. 239, 76 N. W. 482; *State* v. *Poston,* 58 Ohio St. 620, 42 L. R. A. 237, 51 N. E. 150; *Ledgerwood* v. *Pitts,* 122 Tenn. 570, 125 S. W. 1036; *Morrow* v. *Wipf,* 22 S. D. 146, 115 N. W. 1121; *Line* v. *Board of Election Canvassers,* 154 Mich. 329, 16 Ann. Cas. 248, 18 L. R. A. (n. s.) 412, 117 N. W. 730; *Montgomery* v. *Cheef,* 118 Ky. 766, 82 S. W. 388; *State* v. *Johnson,* 87 Minn. 221, 91 N. W. 604; *State* v. *Felton,* 77 Ohio St. 554, 12

Ann. Cas. 65, 84 N. E. 85; *Dooley* v. *Jackson,* 104 Mo. App. 21, 78 S. W. 330.)

We believe it cannot be successfully urged under these citations, and a great many more that could be found, that any constitutional rights would be denied by the refusal to consider the precincts which it is agreed absolutely did not comply with the law.

The object and purpose of the law requiring a man to sign his name on the registry book must be to prevent fraud. If that is its object and purpose, the question of whether or not this statute is mandatory or directory only does not enter, because admittedly if it is not followed its object and purpose will be defeated. It is a very salient rule of law that where the object and purpose of a law will be defeated by failure to comply with its provisions its provisions are mandatory. (*State ex rel. Metcalf* v. *Wileman,* 49 Mont. 436, 143 Pac. 565; *Harrington* v. *Crichton,* 53 Mont. 388, 393, 164 Pac. 537; 9 R. C. L. 1076.) That the Act in question (secs. 576, 704, Rev. Code 1921) is mandatory, see *Hope* v. *Flentge,* 140 Mo. 390, 47 L. R. A. 806, 41 S. W. 1002; *Stranghan* v. *Meyers,* 268 Mo. 580, 187 S. W. 1159; *Corbett* v. *Bradley,* 7 Nev. 106; *Hurford* v. *City of Omaha,* 4 Neb. 336; *Fitzmaurice* v. *Willis,* 20 N. D. 372, 127 N. W. 95; *State* v. *Trask,* 135 Wis. 333, 115 N. W. 823.

*Mr. H. C. Crippen,* for Respondent, submitted a brief and argued the cause orally.

The question to be determined on this appeal is whether or not the failure of the voters to sign their names to the pollbooks in the various precincts invalidated the election in such precincts. It turns on whether or not the provision of section 576, Revised Codes of 1921, with regard to the voter signing his name in the precinct registry book, is mandatory or merely directory, and whether his failure to do so is merely an irregularity, or is fatal to the entire vote in such precinct.

Nowhere does the statute provide that if he does vote, and he is otherwise qualified, the omission with regard to the sign-. ing of his name shall invalidate his ballot or invalidate the ballots of all who voted in that particular precinct, and no-where in the Codes of this state do we find any such provision. The law generally, throughout the several states, with regard to elections, is that such an omission is merely an irregularity, unless there be fraud, or unless the statute specifically states that such a failure invalidates the ballot or the vote, and that the vote of the elector who fails in any of these particulars shall not be thrown out, nor the vote of the precinct. This question has been before this court many times, and after the first decision it has uniformly been held that an omission such as the one here complained of is merely an irregularity, and that the statute with reference to the same is directory and not mandatory. (*Price* v. *Lush*, 10 Mont. 61, 9 L. R. A. 467, 24 Pac. 749; *State* v. *Fransham*, 19 Mont. 273, 48 Pac. 1; *Lane* v. *Bailey*, 29 Mont. 548, 75 Pac. 191; *Harrington* v. *Crichton*, 53 Mont. 388, 164 Pac. 537; *Wells* v. *Taylor*, 5 Mont. 202, 3 Pac. 255; *Heyfron* v. *Mahoney*, 9 Mont. 497, 18 Am. St. Rep. 757, 24 Pac. 93; *Carwile* v. *Jones*, 38 Mont. 590, 101 Pac. 153.)

Almost all other jurisdictions are in accord with the decisions of this state to the effect that before the election, certain requirements are mandatory, and after the election, if a question is raised, they shall be held to be simply directory, unless it can be shown that there was fraud, or that the result would have been different if such requirements had been complied with. (9 R. C. L. 1093, 1173; *Carabajal* v. *Lucero*, 22 N. M. 30, 158 Pac. 1088; *Carn* v. *Moore*, 74 Fla. 77, 76 South. 337; *Rattigan* v. *Searing*, 105 Misc. Rep. 155, 172 N. Y. Supp. 804; *Russell* v. *Stevens*, 118 Me. 101, 106 Atl. 115; *Winters* v. *Independent School Dist.* (Tex. Civ.), 208 S. W. 574; *State* v. *Arnold*, 278 Mo. 672, 213 S. W. 834; *People* v. *Graham*, 267 Ill. 426, Ann. Cas. 1916C, 391, 108 N. E. 699; *People* v. *Green*, 265 Ill. 39, 106 N. E. 504; *In re Contest of Special Election*, 91 Ohio St. 308, Ann. Cas. 1916E, 1004, 110 N. E. 491; *Kerlin*

v. *City of Devils Lake,* 25 N. D. 207, Ann. Cas. 1915C, 624, 141 N. W. 756; *Lamb* v. *Palmer,* 79 Okl. 68, 191 Pac. 184.)

But counsel for appellant argue that the direct primary as provided for by the laws of this state is not an election in contemplation of the Constitution of the state. This may be so, in so far as constitutional requirements are concerned, but the legislature has spoken in no uncertain terms when it declares that the same is an election. (Secs. 582, 631, 670, Rev. Codes 1921; see, also, 9 R. C. L. 1074.)

The weight of authority is that the right of a majority of a party to select its candidate is as valuable to the electorate as the right to vote for them after they are so chosen. (See *Ladd* v. *Holmes,* 40 Or. 167, 91 Am. St. Rep. 457, 66 Pac. 714.)

In all of the cases cited by counsel, without exception, the question involved is with regard to a regulation or some regulation other and different from the regulations prescribed for the general election, such as not permitting a party to have its name upon the ballot if the party's strength falls below a certain percentage, or that each voter must declare his party affiliation when he comes to vote, or, as in the Michigan case, the use of voting machines, where a person might vote for any candidate. Therefore, it would seem that all of such cases are not in point, for the reason that in this state the qualifications of the voter at the primary are the same as the qualifications at the general election, and the regulations prescribed for conducting the election at the primary are identical with the regulations at the general election.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an appeal from a judgment dismissing the contest made by C. E. Thompson, the appellant herein, of the election of George M. Chapin as the nominee of the Republican party in Rosebud county for the office of sheriff of that county at the general election to be held in November, 1922. Both were regularly qualified candidates for nomination to such office on the Republican ticket at the primary election held in Montana and in Rosebud county on August 29, 1922. The appeal is

from the judgment, presented upon the judgment-roll, including therein an agreed statement as to the facts, embodied in the court's order dismissing the contest.

The only question is as to whether the votes cast in Cartersville precinct are illegal because of the failure of the electors who voted to sign their names upon the precinct register book at the time of voting. The same question is presented as to five other precincts in the county, but may well be determined by a consideration of the facts appearing with regard to Cartersville precinct alone.

The official canvass of the votes for such nomination showed the respondent, George M. Chapin, to have received 588 votes, and the appellant to have received 570 votes; and the respondent was declared to be the nominee of the Republican party for such office of sheriff at the ensuing general election.

It appears that in Cartersville precinct the registration-books, with other voting material, were regularly furnished for the primary election, which books contained the names of all the registered electors entitled to vote in that precinct, and in a separate column opposite the name of each there is a space provided for the signature of each voter; that at all times during the progress of the election such registration-books were openly in the custody of the election officials, but that none of those who voted and whose ballots were canvassed and counted signed the precinct register book or books, and that such books are now in the office of the county clerk and recorder without the signature, in the column reserved for that purpose, of any of those who voted in that precinct at such primary election.

If the votes cast in Cartersville precinct are illegal, and therefore not proper to be canvassed and counted, the result of the primary election will be changed, so as to make the appellant, C. E. Thompson, the nominee of the Republican party for such office of sheriff. By discarding the votes cast in this precinct, thirty-one in all, two are deducted from the official total of the appellant, giving him 568 votes, and twenty-nine are deducted from the respondent's vote making it total

but 559, thus constituting the appellant the nominee of the Republican party by a majority of nine.

The able district judge, George A. Horkan, in an elaborate opinion, incorporated in the record on appeal by stipulation, reviewed the statutory provisions and the decisions of this court, and therein stated: "The learned counsel for contestant, Thompson, argued with great force that the court should eliminate from the count and declare illegal the votes cast in said precincts for the reasons herein designated; that no question of the elector's right to vote or the loss of a vote for a person for an office is at issue; that the electors whose ballots may not be counted in a primary election have lost nothing, no inherent right, no constitutional guaranty, no sacred personal thing; that the 'rules of the game' as laid down by the legislature should be carried out literally and be declared mandatory when applied to a primary election, even though the same 'rules of the game' have been held by our own supreme court and other courts of the country as merely directory when applied to general or other elections to office; that said sections 576 and 704 should be complied with, and that a failure of an elector to comply with said sections has the same legal effect as the failure of an elector to register prior to an election in conformity with other chapters wherein section 576 is contained, for the reason that said law and said legislation was enacted to secure the purity of elections and to guard against abuses of the elective franchise. The doctrine which counsel for contestant, Thompson, so forcibly and ably advanced is novel and unique. Unfortunately for contestant, we find no Montana authority to support it. We cannot subscribe to the doctrine thus advocated by counsel for contestant, for, if we did so, in our opinion we would be going contrary to a long line of decisions of our own supreme court and other high courts which hold similar statutes to that involved here as directory, and not mandatory. We also would be compelled to disregard the equally well-established rule that election laws must be liberally construed."

The statute reads as follows: "The judges of election in each precinct, at every general or special election, shall, in the precinct register book, which shall be certified to them by the county clerk, mark a cross (X) upon the line opposite to the name of the elector, before any elector is permitted to vote the judges of election shall require the elector to sign his name upon one of the precinct register books, designated by the county clerk for that purpose, and in a column reserved in the said precinct books for the signature of electors. If the elector is not able to sign his name he shall be required by the judges to produce two freeholders who shall make an affidavit before the judges of election, or one of them, in substantially the following form: [Setting out the form of affidavit.] If the elector fails or refuses to sign his name and if unable to write fails to procure two freeholders who will take the oath herein provided, he shall not be allowed to vote. * * * " (Sec. 576, Rev. Codes 1921; sec. 704, *Id.*) And sections 631 and 670, *Id.*, make it plain that primary nominat-[1] ing elections are to be considered in the same category as other elections; the general laws governing elections being expressly made applicable thereto.

That the district court was correct in its decision and judgment clearly appears from a reference to the history of the statute. It was enacted first in 1911, and therein "the judges of election in each precinct" are required to "mark a cross (X) upon the line opposite to the name" of each elector in the register book "when-said elector shall have voted." (Sec. 26, Chap. 113, Laws 1911.) As amended in 1913, in addition to being required to "mark a cross (X) upon the line opposite to the name of the elector * * * upon one of the precinct register books," "*the judges of election in each precinct,*" "before any elector is *permitted* to vote, * * * shall require the elector · to sign his name upon one of the precinct register books, * * * in a column reserved in the said precinct books for the signature of electors." (Sec. 26, Chap. 74, Laws 1913.) This same provision was re-enacted in 1915 (sec. 26, Chap. 122, Laws 1915) and is now section

576, Revised Codes of 1921, above set forth, the requirements
of which are under consideration on this appeal. And in the
Act it is expressly declared that the word "election," as therein
used, shall be applicable "to general, special" and "primary
nominating   *   *   *   elections." (Sec. 582, Rev. Codes
1921.)

It is made the duty of the judges of election to require the
[2]  elector to sign the registration-book at the place provided
for that purpose, opposite his name; and should he, being able
to write, refuse to do so, it would be proper for the judges
to deny him the right to vote. The elector is given the privi-
lege to vote, but the law prescribes the conditions; however,
should the judges fail in the performance of their duty in
requiring the elector to so sign, he should not thereby be
deprived of his franchise. The duty is thus placed upon the
judges *"to require   *   *   *   the elector to sign"* before he
"is permitted to vote," and the obligation rests upon the
elector to so sign when so required as a condition to his right
to vote. If this condition precedent be not required of the
elector, the judges have failed in the performance of their
administrative duties, and a qualified registered elector in no
manner at fault should not on this account be disfranchised.
Those at fault were the judges, not the electors; and it would
be a manifest injustice to disfranchise electors solely because
of the neglect of duty on the part of the officials designated
to administer the law.

The following general principles applicable were early
given approval by this court in a decision by Mr. Justice De
Witt, as follows: " 'Statutes tending to limit a citizen in the
exercise of the right to vote should be liberally construed in
his favor, and exceptions which exclude a ballot should be re-
stricted, rather than extended, so as to admit the ballot if the
spirit and intention of the law is not violated, although a
liberal construction would violate it. The result, as shown by
the ballots deposited by legal electors, must not be set aside,
except for causes plainly within the purview of the statute.'
*   *   *   'The departure from the law in matters which the

legislature has not declared of vital importance must be substantial in order to vitiate the ballots. This appears to be the general current of all the authorities.' In *Bowers* v. *Smith,* 111 Mo. 61, 20 S. W. 101, it is said: 'If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. In the absence of such declarations, the judiciary endeavor, as best they may to discern whether the deviation from the prescribed forms of law had or had not so vital an influence as to prevent a full and free expression of the popular will.' (*Boyd* v. *Mills,* 53 Kan. 594, [42 Am. St. Rep. 306, 25 L. R. A. 486, 37 Pac. 16].)" (*Stackpole* v. *Hallahan,* 16 Mont. 40, 28 L. R. A. 502, 40 Pac. 80.)

The general rule laid down by this court, which appears to be universally recognized, is that the right of our citizens to vote at an election cannot be defeated because of the failure of election officials to perform an administrative duty in the conduct of the election, specifically imposed upon such officials. (*State ex rel. Brooks* v. *Fransham,* 19 Mont. 273, 48 Pac. 1; *Lane* v. *Bailey,* 29 Mont. 548, 75 Pac. 191; *Carwile* v. *Jones,* 38 Mont. 590, 101 Pac. 153; *Stephens* v. *Nacey,* 47 Mont. 479, 133 Pac. 361; *Harrington* v. *Crichton,* 53 Mont. 388, 164 Pac. 537.)

"Various provisions are made by statute for recording the names of persons who vote, such as provisions for placing a check mark or letter V opposite the name of a voter on the certified list of voters, or for recording his name on the poll sheet, or for requiring him to sign a roster. The duties imposed by such statutes are to be performed by the election officers and a failure on their part to perform them, or a mistake in doing so, does not invalidate the vote of an individual elector or the votes of the entire precinct." (20 C. J. 177.)

Ignorance, inadvertence or even intentional wrong on the [3, 4] part of the judges of election should not be permitted, in the absence of fraud or collusion, to disfranchise an elector, much less an entire precinct. While it is true that irregularities invite a concealed fraud, yet, where the fault lies with

the election officials rather than the elector, they should be disregarded, unless the statute expressly declares that the same is fatal to the election, or unless they are such as in themselves change or render doubtful the result of the election. The voter should not be deprived of his right to vote nor the successful candidate suffer, if by any reasonable interpretation of the statutes governing elections it can be prevented.

In this instance the failure to comply with the statute was the fault of the judges, as it does not appear that they required the electors to sign the registry book before voting. The electors were not to blame. They did just as was required of them by the officials in charge of the election. Had [5] the judges performed their duty and insisted upon the electors so signing before being permitted to vote, a vote cast or attempted to be cast by an elector so failing or refusing would be properly disregarded; and under such state of facts a different conclusion would be reached.

The judgment is affirmed. *Remittitur* forthwith.

*Affirmed.*

ASSOCIATE JUSTICES FARR, COOPER and HOLLOWAY concur.