VINGE M. LONG et al., Plaintiffs and Appellants, *v.* SCHOOL DISTRICT NO. 44 et al., Defendants. and Respondents.

No. 11218.
Submitted March 6, 1967. Decided March 17, 1967.
Rehearing denied April 24, 1967.
425 P.2d 822.

Smith & Emmons, Patrick McKittrick (argued), Great Falls, for appellants.

Peter L. Rapkoch (argued) and Leonard McKinney, Lewistown, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by plaintiffs from a judgment entered in

favor of defendants. Plaintiffs sought to enjoin the sale of school bonds. Defendants moved to dismiss plaintiffs' amended complaint for failure to state a claim upon which relief could be granted. The district court granted the motion, and plaintiffs refused to plead further suffering the adverse judgment.

The plaintiffs are Vinge M. Long, Rike McClelland, and Rex T. Walker and are registered voters and taxpayers in School District No. 44 of Fergus County, Montana (hereinafter referred to as School District No. 44), and Moore High School District 44 of Fergus County, Montana (hereinafter referred to as Moore High School District 44).

The defendants are School District No. 44, its board of trustees and clerk, and Moore High School District 44, its board of trustees and clerk. The same individuals make up the board of trustees and clerk for School District No. 44 and for Moore High School District 44.

Moore High School District 44 is composed of the following common school districts: School District No. 44; School District No. 6, Garneil, Montana; School District No. 19, Paradise, Montana; School District No. 70, Buffalo, Montana, and School District No. 120, Kolin, Montana.

The board of trustees of School District No. 44 received a valid petition requesting the board to call an election to submit to the qualified voters the question of whether the board should be authorized to issue and sell bonds for the purpose of erecting and equipping a new grade school. The petition estimated that the amount of bonds required for this purpose would be $210,000.00. On December 29, 1965, the board of trustees passed a resolution calling for an election on this question on January 22, 1966.

The board of trustees of Moore High School District 44 received a valid petition requesting the board to call an election to submit to the qualified voters the question of whether the board should be authorized to issue and sell bonds for the purpose of erecting and equipping a new high school. The peti-

tion estimated that the amount of bonds required for this purpose would be $315,000.00. On December 29, 1965, the board of trustees passed a resolution calling for an election on this question on January 22, 1966.

Shortly after these elections had been called, the board of trustees issued a brochure which explained the proposed building plan should the bond issues pass. The brochure was signed "Board of Trustees, Moore School District No. 44," but since the same individuals comprise both boards, it can be assumed that the brochure explained the position of both boards.

The brochure explained that the new grade school and high school would form one compact building; that the grade school and high school would share a central library, a multi-purpose room, a lunchroom, and industrial arts, science, and home economics facilities; and that construction of the grade school and high school in this manner and would save on construction costs. The brochure pointed out the various compelling reasons for the construction of the grade school and high school as the following: (1) The state fire marshal had declared the grade school and high school buildings fire hazards; (2) Without the construction of new grade school and high school facilities the schools would lose their accreditation by the state board of education; (3) The grade and high schools were presently on a "warned" status by the state board of education; (4) Loss of accreditation would result in loss of state and county funds presently provided to the schools and would require a special levy on the taxpayers of the districts.

On January 12, 1966, one of the trustees indicated at a public meeting that if either bond issue failed, no construction would take place due to the manner in which the grade school and high school had been planned.

The voters in School District No. 44 approved the bond issue for the grade school by a vote of 144 to 94. The voters in Moore High School District 44 approved the bond issue for the high school by a vote of 156 to 146.

The main issue presented by this appeal is whether the boards of trustees of School District No. 44 and Moore High School District 44 have the authority to build the new grade school and high school in the manner planned, that is, by combining the schools into one compact building unit which shares facilities that are common to both schools.

To properly discuss this issue we must make clear the relationship that exists between School District No. 44 and Moore High School District 44.

Chapter 47, Extraordinary Session Laws of 1933, which was codified as sections 1301.1 to 1301.6, R.C.M.1935, allowed for the creation of high school districts like Moore High School District 44. Section 1301.2, R.C.M.1935, provided in part: "In all counties having county high school, in which there are maintained two (2) or more high schools, a commission consisting of the county commissioners and the county superintendent of schools shall at the request of any high school board of trustees in the county, divide the county into high school districts for the purpose of this act * * *.

"* * * Common school districts may be grouped for the purpose of this act * * * 'No common school districts shall be divided for the purposes of this act but must be made a part of a high school district in its entirety. * * *"

Chapter 275, Laws of 1947, repealed sections 1301.1 to 1301.6, R.C.M.1935, and was codified as sections 75-4601 to 75-4606, R.C.M.1947. Section 75-4605, recognized the validity of high school districts created under the 1933 Act and provides in part: "* * * All high school districts heretofore created under the provisions of sections 1301.1 to 1301.6, inclusive, of the Revised Codes of Montana, 1935, and chapter 275, Laws of 1947, and amendments thereof, are hereby recognized as legally organized high school districts with full powers under this act."

Section 75-4601 provides how the board of trustees of such high school districts are designated and reads in part: "* * *

(T)he boards of trustees of any school districts maintaining district high schools, are hereby designated as the board of trustees of the respective high school districts established under this act * * *." The section goes on to provide how additional members of the high school district board of trustees can be elected.

The powers, purpose, and bonding power of such high school districts are spelled out in the following sections:

Section 75-4605 provides in part: "This act shall not prevent the exercise of powers as elsewhere in the statutes of this state provided. It shall constitute an additional and cumulative method of borrowing money and of carrying out the powers herein authorized. The high school districts created under the provisions of this act, are for the construction, repair, improvement, and equipment purposes only * * *."

Section 75-4603 provides: "Each high school district created under this chapter shall be a corporation separate from the common school districts included therein. The boards of trustees of high school districts established under this act are hereby vested with the power and authority to issue and negotiate bonds on the credit of the high school districts in conformity with and for any one or more of the purposes provided in section 75-3901, and to the full amount permitted by section 6 of article XIII of the state constitution, as amended."

Section 75-3901 provides in part: "The board of trustees of any school district within this state is hereby vested with the power and authority to issue and negotiate coupon bonds on the credit of the school district for any one or more of the following purposes:

"(a) For the purpose of building * * * one or more schoolhouses in said district; furnishing and equipping the same, and purchasing the necessary lands therefor."

In their brief plaintiffs refer to Abshire v. School District, 124 Mont. 244, 220 P.2d 1058, and the following quote: "A school district is a public corporation, but with very limited

powers. It may, through its board, exercise only such authority as is conferred by law, either expressly or by necessary implication * * *." Thus, the board of trustees may exercise authority conferred by law by necessary implication.

From the sections we have quoted above, two basic functions of high school districts can be stated: (1) The legislature created an entity which allows common school districts to combine to provide the necessary high schools for the children of the districts; and (2) The legislature gave this entity the bonding power required to carry out the building, equipping, and repairing of such high schools.

That the legislature intended close cooperation between the high school district and the common school districts is evidenced by the fact that the legislature formed the board of trustees of the high school district from the boards of trustees of the common school districts.

The cooperation by the boards of trustees in this case is such that the needs of both districts are fulfilled by making the two schools one compact unit and by sharing certain common facilities. The costs of each school are, and must be, allocated to the respective districts. This solution to the pressing problems that faced both districts results in the construction of better facilities for both districts at a savings to taxpayers in both districts. We would be hard pressed to find that this common sense approach to the problems was not necessarily implied in the powers conferred upon the boards by the legislature. Therefore, we hold that the boards did have such authority.

This holding also answers plaintiffs' contention that the petitions presented to the boards were changed. The boards accomplished exactly what the petitions sought, namely, construction of a grade school and a high school. The boards very openly informed the voting public of the manner in which they intended to accomplish the requests of the petitions. The manner in which the schools would be built was

for the boards to decide within the confines of their authority.

█ █ Plaintiffs' contention that the boards attempted to circumvent the debt limits of the districts imposed by Mont. Const., Art. XIII, § 6, is not valid. The manner in which the two schools are to be constructed will present some accounting problems, but the mere fact that such problems exist does not mean that the boards will not properly allocate the funds from the bond issues.

█ Plaintiffs further contend that the bond issues are illegal and void because the boards of trustees failed to canvass the vote as required by section 75-1612. Yet, the plaintiffs do not allege that such canvass would have changed the results of the elections. In Hehn v. Olson, 138 Mont. 576, 584, 585, 358 P.2d 431, Mr. Justice Castles in his concurring opinion dealt with the failure of election officials to carry out their duties: "In the Montana case of Thompson v. Chapin, 64 Mont. 376, 209 P. 1060, this court * * * stated, at p. 385, 209 P. at page 1062: '* * * While it is true that irregularities invite a concealed fraud, yet, where the fault lies with the election officials rather than the elector, they should be disregarded, unless the statute expressly declares that the same is fatal to the election, *or unless they are such as to themselves change or render doubtful the result of the election*'. Emphasis supplied. * * *

"It is nowhere provided that a failure on the part of the election officials to follow the provisions of § 75-1612 will be fatal to the election. Therefore, unless the failure to follow the statute would 'change or render doubtful the result of the election' the election results must stand under the rule stated in Thompson v. Chapin, supra."

█ Finally, we come to plaintiffs' contention that by deleting some votes, changing other votes, and casting some uncast votes a different result would be accomplished in the high school bond issue. Plaintiffs' suggestions to change some votes and cast some uncast votes are completely without merit.

Plaintiffs' contention that four votes might possibly be legally challenged and thus deleted might have some merit. However, even assuming that each vote could be successfully challenged and further assuming that each such vote was a vote for the high school bond issue, we are still left with 152 votes for the bond issue and 146 votes against the high school bond issue. Thus, this contention is likewise without merit.

We have carefully examined each issue raised by plaintiffs and find them all to be without merit.

The judgment appealed from is affirmed.

MR. JUSTICES ADAIR, DOYLE, JOHN C. HARRISON and the HONORABLE VICTOR H. FALL, District Judge, sitting in place of MR. JUSTICE CASTLES, concur.