STATE OF MONTANA ex rel. HOWARD C. TILZEY, AL-
BERT POSPISIL, ALBERT LARSEN, RAY ROBINSON,
CLARENCE BIEHL and RAYMOND BARTA, Plaintiffs,
v. SCHOOL DISTRICT NO. 44 and Moore High School
District of Fergus County, Montana, and EDWARD J.
MAJERUS and JAMES WICHMAN, Individually, and as
members of the Board of Trustees of said School Districts,
Defendants.

No. 11337.
Submitted June 5, 1967. Decided June 15, 1967.
428 P.2d 974.

510

Edmund P. Sedivy, James Morrow, Jr. (argued), Bozeman, for plaintiffs.

Ross W. Cannon, Helena, Neil Height, County Atty. (argued), Peter L. Rapkoch (argued), Lewistown, for defendants.

PER CURIAM:

This is an original proceeding wherein petitioners seek a writ of mandamus. Following an ex parte hearing on May 24, 1967, this court made an order for issuance of alternative writ of mandamus. The alternative writ demanded in substance that defendants proceed as soon as reasonably possible with the sale of school bonds or appear in this court on June 5, 1967, to show cause why such sale of school bonds should not proceed. Defendants complied with the alternative writ by appearing in this court by filing a motion to quash and strike, and an answer. The matter was then argued.

The petitioners, five in number, are residents, registered voters, and taxpayers in School District No. 44 and Moore High School District No. 44 both of Fergus County, Montana. Defendants are the named school districts and Edward J. Majerus

and James Wichman, individually, and as members of the boards of trustees of the school districts.

Although there are two school districts concerned in this action, each having its own board of trustees, the same three individuals make up the membership of both boards. Therefore, we will refer to the boards simply as the Board.

The facts of this action are: In 1965, certain residents of the school districts desired to have a new grade school and a new high school built. They circulated petitions asking for elections to authorize the Board to issue and sell bonds for these schools. Elections were held on January 22, 1966, and the bond issues were approved. The sale of the bonds were properly noticed, and bids received and accepted on March 22, 1966. The companies making the bids on the bonds did so subject to the condition that the Board deliver the bonds within sixty days. The Board was unable to deliver the bonds within this time limit since litigation had been filed against the Board on March 21, 1966. The bids were subsequently withdrawn.

The litigation which prevented the issuance of the bonds was Long v. School District No. 44, 149 Mont. 220, 425 P.2d 822. This litigation attacked the validity of the school bond elections and the manner in which the Board was going to carry out the petitions which had been presented to the Board requesting a new grade school and a new high school. The Board stated to the electors that if the bond issues were approved, then the grade school and high school would be combined into one compact unit which would be capable of sharing facilities common to both schools. In the Long case, supra, we upheld the validity of the elections and the authority of the Board to construct the schools in the manner proposed, and the litigation became final on April 24, 1967, when we entered an order denying the petition for rehearing.

On April 26, 1967, the Board held a meeting to determine the future course of the building program. Mrs. Melichar, a member of the Board, moved for a resolution that the sale of the

bonds continue as soon as possible. This motion failed. Mr. Wichman moved that it was not feasible to sell the bonds at this time for both the high school and grade school. This motion carried.

The minutes of the meeting state that "A large number of citizens of the community were also present." Some of these "citizens of the community" were the petitioners, and they interpreted the action of the Board in refusing to pass and adopt a resolution providing for the issuance of the bonds as a refusal to comply with the provisions of section 75-3915, R.C.M.1947, which provides in part: "If such election shall authorize the issuance of such bonds, the board of trustees shall within sixty (60) days from the date of such election pass and adopt a resolution providing for the issue of the bonds; provided that such bonds may be issued in one or more series or installments as the board may in such resolution direct. * * *" Therefore, the petitioners brought this action contending that section 75-3915 imposes a legal duty upon the Board to proceed with the sale of the bonds as soon as reasonably possible and to carry out the construction projects which the elections approved. The petitioners further contend that the sixty day time limit of section 75-3915 has expired due to the litigation which prevented the sale of the bonds and that the time limit now applicable is a reasonable time period only.

Defendants in their answer attach a different meaning to their actions at the April 26 meeting. They point out these factors:

(1)   that the building plans and construction costs were prepared over a year and a half ago;

(2)   that construction and material costs have risen substantially in that time period; and

(3)   that in their opinion the proposed building plans are not now feasible with the amount of money approved at the elections. Defendants state that delay is necessary to investigate

alternative building plans to determine if the amount of money available will be sufficient for any construction project.

In answer to petitioners' contention that defendants have not complied with section 75-3915 defendants argue that the provisions of this section give them 60 days from the final determination of the litigation which prevented the issuance of the bonds in which to take the necessary action. Defendants also argue that section 75-3915 is not mandatory but rather that it is directory only.

In the Long case, supra, the Board strongly urged upon this court the need for new schools. Their position appears to be unchanged in this action as the Board continues to recognize the pressing need for new facilities. In addition, section 75-1632 imposes the legal duty upon the board of trustees to "build, purchase or otherwise acquire schoolhouses, school dormitories and other buildings necessary in the operation of schools of the district * * *."

Thus, the issue presented by this action is whether this court should take action at this time to compel the Board to comply with section 75-3915.

In deciding this issue we turn first to defendants' contention that the sixty day period of section 75-3915 should begin to run on April 24, 1967, the date of the final determination of the litigation preventing the sale of the bonds. In support of this position, defendants cite the case of State ex rel. Sullivan v. School Dist. No. 1, 100 Mont. 468, 475, 50 P.2d 252, 254, which was a case in which a taxpayer sought an injunction to prevent the issuance of bonds which were going to be used for the purpose of obtaining a federal loan and eventually the funds so obtained were going to be used to build a new high school. The taxpayer contended that the bonds could not be issued since the board of trustees had passed the resolution ordering the issuance of the bonds more than 60 days after the election. The fact was that the resolution was delayed by litigation and negotiations with the federal government. This court rejected the

taxpayer's contention and stated: "We do not believe that the delay in this case, which was caused by litigation and negotiations with the government, in any manner affected the legality of the original authority voted by the district. Section 15 of Chapter 147, Laws of 1927, [presently section 75-3915, R.C.M. 1947,] which provides that the board of trustees shall set within sixty days after the election authorizing issuance of the bonds, must at this stage of the proceedings be regarded as directory only, and not mandatory."

It would be unreasonable to hold that litigation which tests the validity of an election and prevents the Board from taking necessary steps to carry out the bond issue approved in the election does not also suspend the running of the sixty days provided for in section 75-3915. We agree with defendant's contention that the sixty-day period of section 75-3915 should begin to run on April 24, 1967, the date of the final determination of the litigation preventing the sale of the bonds, and we so hold.

In support of their contention that the provisions of section 75-3915 are directory only defendants refer this court to the Sullivan case, supra, and to Shekelton v. Toole County, 97 Mont. 213, 219, 220, 33 P.2d 531. In the Shekelton case, supra, an action was brought to enjoin the issuance of bonds. The contention made was that the special election authorizing the issuance of the bonds was void for failure to comply with election laws in three respects, one of which was failure to adopt the required resolution within the thirty days provided by the pertinent state law. This court refused to void the election treating the county commissioners' belated actions as compliance with the law, stating: "Section 14 of chapter 188, Laws of 1931, provides that 'the board of county commissioners shall, at a regular or special meeting held within thirty (30) days thereafter, pass and adopt a resolution providing for the issuance of such bonds.' In this case, the resolution was not passed

or adopted until after the expiration of the 30-day period. It was not done until May 9, 1934.

"Here once more plaintiff contends that the language of the statute is mandatory and requires a strict compliance. * * *

"This assignment would seem more properly to present a situation where the directions of the statute 'are given merely with a view to the proper, orderly and prompt conduct of business.' It does not appear that any substantial rights have been impaired by the board's delay in adopting the resolution. On the contrary, it is apparent that the general purpose and result contemplated have been fairly and substantially accomplished.

"Under the authorities hereinbefore cited, we hold that this provision of the statute should not now be declared to have been mandatory. It might, however, have been mandatory in the sense that the board could have been compelled to pass and adopt the resolution within the designated thirty days. Now that the board has acted, even out of time, such provision should fairly be viewed as directory only."

We think that both the Sullivan case, supra, and the Shekelton case, supra, leave the question of the nature of the provisions of section 75-3915, whether it is mandatory or directory, to the nature of the action involved and the facts of each individual case.

The Board argues strongly that they are making a good faith effort to solve the financial aspects that now prevent, in their opinion, the building of the proposed school buildings. We must at the present accept this good faith contention, and we further assume that the Board will comply with the legal duties which are placed upon them.

We think that the action taken at the meeting of April 26, 1967, can be interpreted in two ways and that is the reason that the alternative writ was issued. The defendants have appeared and explained the meaning of their actions. There is merit to defendants' contention that the changed conditions

present a problem that must be solved by the exercise of the Board's discretion and to the contention that time remains in which the Board can still take timely action under section 75-3915. We must assume at this time that the Board will take this appropriate action to carry out the requests of the petitions which have been approved by the elections of January 22, 1966.

Since we believe that the positions of both sides to this proceeding have merit and that they were pressed in good faith, we do not allow attorneys' fees to either party. Each party is to bear its own costs in this proceeding.

The petition for the writ is dismissed.