NICHOLAS C. CONTAKOS vs. ELECTION COMMISSION OF
LOWELL, SAMUEL A. SAMPSON, intervener.

Middlesex.   March 3, 1954. — March 31, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Elections. Law or Fact. Practice, Civil, Election case.*

The proper counting of a disputed ballot in an election case according
to what appears on the face of the ballot is a matter of law for the
courts notwithstanding that reasonable men might differ in inter-
preting the voter's intent.   [256–257]

From the face of protested ballots cast for councillors at a regular munic-
ipal election held in a city having a Plan E charter with proportional
representation in the city council this court determined to which can-
didates certain ballots should be credited where the intent of the
voters could be ascertained with reasonable certainty and decided
that one other ballot should not be counted since the voter's intent
was left a matter of conjecture.   [258–260]

PETITION for a writ of mandamus, filed in the Superior
Court on December 4, 1953.

The case was heard by *Brogna*, J.

*Woodbury F. Howard*, (*Mendel Shapiro* with him,) for the
intervener.

*George C. Eliades*, (*Peter L. Speronis* with him,) for the
petitioner.

No argument nor brief for the respondent.

WILKINS, J.   The petitioner Contakos and the intervener
Sampson were two of forty-two candidates for the nine
offices of councillor at a regular municipal election held in
Lowell on November 3, 1953.   Lowell has a Plan E charter
with proportional representation in the city council.   G. L.
(Ter. Ed.) c. 54A, as appearing in St. 1938, c. 341, § 1;   c. 43,
§§ 93–116, inserted by St. 1938, c. 378, § 15.

The charter has been in force since 1943, and G. L.
(Ter. Ed.) c. 43, § 115, inserted by St. 1938, c. 378, § 15,

still applies.  See St. 1949, c. 661, §§ 1, 1A; *Mayor of Glouces-
ter* v. *City Clerk of Gloucester*, 327 Mass. 460, 463.  The main
features of the scheme of voting are set forth in G. L. (Ter.
Ed.) c. 54A, § 9.  See *Moore* v. *Election Commissioners of
Cambridge*, 309 Mass. 303, 307–310.  Each candidate is
credited with one vote for every valid ballot sorted to him
as a first choice, or later credited to him, and no ballot may
be credited to more than one candidate at the same time
(§ 9 [b]).  The quota is the smallest number of votes which
a candidate must receive in order to be assured of election
without electing more candidates than there are offices to be
filled.  Whenever, at any stage of the counting, the vote of a
candidate equals the quota, he is declared elected, and, with
exceptions not now material, no more ballots are credited
to him (§ 9 [c]).  If a candidate is elected while the ballots
are being sorted according to first choices, any subsequently
counted ballot giving him as a first choice is credited to the
next choice marked thereon for a candidate not elected
(§ 9 [e]).  When all ballots have been sorted and credited
according to first choices, every candidate with fewer votes
than the number of signatures required to nominate shall be
declared defeated (§ 9 [g]).  The ballots of defeated candi-
dates are transferred to the candidates respectively indicated
thereon as the next choices among the continuing candidates,
who are those not yet elected or defeated (§ 9 [h]).  When
all such ballots have been transferred, the lowest candidate
is declared defeated, and his ballots transferred in the same
way (§ 9 [i]).  Thereafter each succeeding lowest candidate
is declared defeated one at a time and his ballots transferred
(§ 9 [j]).  The election ends either (1) whenever candidates
to the number to be elected have received the quota, in
which case all continuing candidates are declared defeated;
or (2) whenever another candidate cannot be defeated
without reducing the continuing candidates below the num-
ber to be elected, in which case all continuing candidates
are declared elected (§ 9 [l]).

At the recount held by the respondent commission, on
the twenty-ninth count Contakos, 2,120 votes, and Sampson,

2,128 votes, were the two lowest candidates, and Contakos was declared defeated. His votes were redistributed, and, following the elimination of two other candidates, nine candidates, including Sampson, were declared elected. G. L. (Ter. Ed.) c. 54A, § 9, as appearing in St. 1938, c. 341, § 1. Election certificates were issued to them. G. L. (Ter. Ed.) c. 54, § 137, as amended by St. 1935, c. 55. Under rulings made on the hearing of this petition for a writ of mandamus, the respective votes were Contakos 2,124 and Sampson 2,123. A final judgment was entered directing the respondent commission to amend their records so as to show this result, to conclude the recount in accordance with the statutes, and to recall the certificate of election issued to Sampson.[1] Sampson appealed, and the case is here with report of the evidence. G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4. A bill of exceptions of Contakos, which states that it is "consolidated" with the intervener's appeal, presents rulings adverse to him on certain ballots.

The principles applicable to the judicial consideration of ballots in election cases have been recently stated by us. *Kane* v. *Registrars of Voters of Fall River*, 328 Mass. 511. The court below, and this court on appeal, can correct any error of law appearing on the face of a ballot which has been made by a returning board in counting a ballot as a vote for a candidate which is not a vote for that candidate (pages 516–517). The will of a voter, if it can be determined with reasonable certainty, must be given effect. Where a ballot, considered in the light of the character and location of the mark and conditions attendant upon the election, fairly indicates his intent, the vote should be counted in accordance with that intent provided the voter has substantially complied with the election law. On the other hand, where the ballot is marked so as to leave his intent

---

[1] Before the entry of a final judgment the judge made a separate order that the respondent commission forthwith recall and cancel the certificate of election issued to Sampson. We are informed in Sampson's brief that the respondent commission complied, and that Sampson has not qualified as a member of the city council.

a matter of conjecture, the vote should not be counted [1]
(page 518).

The question for the court is the familiar one of the
interpretation of writings.  Contrary to the intervener's
contention, there is no principle that where reasonable men
might differ in interpreting the voter's intent, the decision
of the returning board must stand.  The *Kane* case is not
an authority for such a proposition.

In substantial compliance with G. L. (Ter. Ed.) c. 43,
§ 112, inserted by St. 1938, c. 378, § 15, the ballots in the
present case relate to the city council only and contain the
following directions to voters:

"Do not use X marks.

"Mark your choices with numbers only.

"Put the figure 1 opposite your first choice, the figure 2
opposite your second choice, the figure 3 opposite your third
choice, and so on.  You may mark as many choices as you
please.

"Do not put the same figure opposite more than one
name."

Rules for counting ballots under proportional represen-
tation are contained in G. L. (Ter. Ed.) c. 54A, § 9 (a),
as appearing in St. 1938, c. 341, § 1: "If a ballot does not
clearly show which candidate the voter prefers to all others,
or if it contains any word, mark or other sign apparently
intended to identify the voter, it shall be set aside as invalid.
Every ballot not thus invalid shall be counted according
to the intent of the voter, so far as that can be clearly ascer-
tained, whether marked according to the directions printed
on it or not. . . . A single cross on a ballot on which no
figure 1 appears shall be considered equivalent to the
figure 1.  If a ballot contains both figures and crosses, the

---

[1] Similar statements may be found in the statutes.  General Laws (Ter.
Ed.) c. 54, § 106, made applicable by G. L. (Ter. Ed.) c. 54A, § 17, as ap-
pearing in St. 1938, c. 341, § 1, provides in part: "If a voter marks more
names than there are persons to be elected to an office, or if his choice cannot
be determined, his ballot shall not be counted for such office."  See also
G. L. (Ter. Ed.) c. 54A, § 9 (a), as appearing in St. 1938, c. 341, § 1, quoted
later in this opinion.

order of the choice shown by the figures shall be taken as
the voter's intention in so far as the order is clearly indicated.
If the consecutive numerical order of the figures on a ballot
is broken by the omission of one or more figures, the smallest
number marked shall be taken to indicate the voter's first
choice, the next smallest his second, and so on, without
regard to the figure or figures omitted."

In the court below the ballots protested were fifteen by
Sampson and thirty-eight by Contakos. Of these the judge
reversed the respondent commission as to eleven, two by
Sampson and nine by Contakos. As to one ballot (exhibit 3)
credited by the respondent commission to Sampson, the
latter does not question the correctness of the judge's ruling
crediting the vote to one of the successful candidates.

Of the ten remaining ballots as to which the judge reversed
the respondent commission, in two cases (exhibits 8 and 15)
a vote for Sampson became a vote for Contakos; in four
cases (exhibits 10, 11, 16, and 26) Sampson lost a vote; in
two cases (exhibits 6 and 24) Contakos gained a vote; and
in two cases (exhibits N and O) Sampson gained a vote.

Turning to exhibits 11, 15, and 16, it seems to us that the
voter in each case by inadvertence at first marked a cross
in the box opposite Sampson's name, and then marked it
over with what he intended to be the figure 1. This seems
to have been the view of the respondent commission. We
think the judge erred in not allowing these three ballots to
remain credited to Sampson.

A somewhat similar case is presented by exhibit 8, a
ballot credited by the respondent commission to Sampson,
but ruled by the judge to be a vote for Contakos. The
ballot shows a figure 2 for Contakos, and figures 3, 4, 5, and
6 for other candidates. In the box on the line with Sampson's
name, there is what we rule to be the figure 1. The voter
apparently sought to supersede a cross by making a heavy
vertical line with a flag at the left of the top similar to the
figure 1 in the directions to voters printed on the ballots.
Contakos contends that this is a figure 7, but inspecting the
ballot as a whole we think it was the voter's intent to num-

ber his choices from 1 to 6, inclusive, and not from 2 to 7, inclusive.

Another ballot where the votes for the other candidates seem decisive in determining the voter's intent is exhibit 26. This voter marked 13 numerical choices, beginning with 1 and ending with 13. Opposite the name of Sampson there is what we rule to be the figure 3. Although the figure is a curve with no pronounced break, the only figure on the ballot which it at all resembles is the "3" in "13." We think that this voter intended to mark an unbroken sequence from 1 to 13, that the respondent commission correctly credited this ballot to Sampson, and that the judge was in error in reversing that ruling.

Certain ballots present questions merely as to what a given mark is. On exhibit 6 there is a mark partly in the box beside the name of Contakos and partly in the box beside the name above. The respondent commission apparently thought this was unintelligible and ruled the ballot ineffective. The judge reversed this ruling and credited the ballot to Contakos. We agree with the respondent commission.

On exhibit 24 there are two candidates each of whom has a "1." A third candidate has what the respondent commission must have regarded as a "2," because the ballot was credited to him. Contakos has a "3." The judge apparently regarded the "2" as not clear or else as another "1," and awarded the vote to Contakos. We agree with the respondent commission, and think that the judge erred in reversing their decision.

Exhibit 10 is a ballot which the respondent commission credited to Sampson. The judge awarded the vote to another candidate. We think that he was right, and in view of the result we do not discuss this ballot.

Exhibit N is a ballot on which Sampson has a "1" and another candidate has what we think was a vertical line to cancel a cross. The respondent commission ruled the ballot invalid. The judge credited the ballot to Sampson. We think that his action was right.

Exhibit O is a ballot which was credited by the respondent commission to another candidate. The judge credited the ballot to Sampson. We think that his ruling was correct. Sampson has either a cross or a "1." According to our view, there is no other figure 1. If the mark is a cross, it is equivalent to a figure 1. G. L. (Ter. Ed.) c. 54A, § 9 (a), as appearing in St. 1938, c. 341, § 1. Other marks resembling crosses placed in boxes on the lines with the names of other candidates are manifestly for the purpose of canceling figures at first made by the voter.

The petitioner argues that the judge was in error in not reversing the decision of the respondent commission as to fourteen other ballots.[1] These need not be individually discussed. We have examined them and are of opinion that there was no error.

To summarize the changes we have made in the rulings of the judge, Sampson has gained five votes (exhibits 8, 11, 15, 16, and 26) and Contakos has lost four votes (exhibits 6, 8, 15, and 24). The respective votes, accordingly, are Sampson 2,128 and Contakos 2,120.[2]

We deem it unnecessary to discuss other questions raised by Sampson. We see no need for a nunc pro tunc order on the certificate of election. Doubtless the respondent commission, if they still have it, will restore to Sampson the original certificate which was recalled.

The judgment is reversed. The petition of Contakos is dismissed. The exceptions of Contakos are overruled. On Sampson's intervening petition, a writ of mandamus is to issue commanding the respondent commission to issue a certificate of his election to the city council at the municipal election held on November 3, 1953.

*So ordered.*

---

[1] Exhibits 1, 2, 4, 5, 7, 9, 12, 14, 17, 18, 19, 20, 21, and 23.

[2] This leaves the votes of Contakos exactly as credited by the respondent commission. While the total vote of Sampson is the same as credited by the respondent commission, he has gained two votes (exhibits N and O) and has lost two votes (exhibits 3 and 10).