JOHN F. KANE *vs.* REGISTRARS OF VOTERS OF FALL RIVER & another, WILLIAM P. GRANT, intervener.

Bristol.   February 7, 1952. — March 27, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Elections. Jurisdiction,* Elections, Justiciable question. *Practice, Civil,* Question of law or fact; Election case; Exceptions: whether error harmful; Appeal. *Mandamus. Error,* Whether error harmful.

An appeal from the "findings and rulings" of the judge in a mandamus case did not lie under either G. L. (Ter. Ed.) c. 231, § 96, or c. 213, § 1D, inserted by St. 1943, c. 374, § 4.

In an election case where the only evidence before the trial court was certain ballots protested on a recount, the proper counting of such ballots according to what appeared on their face and correction of errors made by the registrars of voters in counting them were matters of law for the trial court and this court, the determination of which by the courts was not precluded by the provision of G. L. (Ter. Ed.)

---

c. 54, § 135, as appearing in St. 1943, c. 417, that "the records . . . amended [according to the registrars' determination] shall stand as the true records of the election."

A refusal by the trial judge in an election case to rule that he had no power to change findings of fact made by the registrars of voters on a recount as to the proper counting of certain protested ballots which were the only evidence before him was harmless since he, in arriving at conclusions at variance with those of the registrars, was actually correcting errors of law, a matter within his jurisdiction.

From an examination of the face of protested ballots in an election case, certain of them should be counted as blanks either because the intent of the voters could not be ascertained with reasonable certainty or because they contained identifying marks in violation of G. L. (Ter. Ed.) c. 54, § 80; others should be counted for the indicated candidate where the intent of the voters could be ascertained with reasonable certainty, despite sundry irregularities not amounting to identifying marks within § 80, such as irregularities in the location and form of the marks on the ballots and irregularities through the presence thereon of obliterations, erasures, and writings of various kinds.

The fact that a voter in using a ballot for several offices attempted to vote for more candidates for one of the offices than was permissible did not vitiate a vote properly indicated for a candidate for another office.

PETITION for a writ of mandamus, filed in the Superior Court on November 28, 1951.

The case was heard by *Good*, J.

*J. T. Farrell*, Corporation Counsel, for the respondents.

*H. E. Clarkin*, for the intervener.

*B. Horvitz*, (*J. J. Harrington* with him,) for the petitioner.

SPALDING, J.   This petition for a writ of mandamus is brought against the board of registrars of voters and the city clerk of Fall River.   The petitioner, who was a candidate for public office, asks that the respondent board be ordered to amend their return because, he alleges, they failed to credit him with certain votes to which he was entitled and credited his opponent with certain votes that ought not to have been counted for him.   The petitioner further asks that the city clerk be ordered to issue a certificate of election to the petitioner.   The successful candidate for the office according to the board's determination was allowed to intervene.

The judge determined that the votes cast for the peti-

tioner exceeded those cast for the intervener by thirty-eight and ordered a writ of mandamus to issue granting the relief prayed for. The petitioner, the respondents, and the intervener appealed. They also bring the case here on exceptions. The petitioner presses his exceptions and appeal only in the event that the exceptions of the respondents or of the intervener are sustained or their appeals are successful.

The appeals are not properly here. All of them are from the "supplementary findings and rulings" of the judge. They cannot be considered as appeals under G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4, for that section provides for an appeal only from a "final judgment." *Needham* v. *County Commissioners of Norfolk*, 324 Mass. 293, 295. *Adamsky* v. *City Council of New Bedford*, 326 Mass. 706, 707. *Hannigan* v. *Board of Appeals of Lowell*, *ante*, 366, 367. Nor are they properly here under G. L. (Ter. Ed.) c. 231, § 96, as appeals from an "order decisive of the case founded upon matter of law apparent on the record." See *Adamsky* v. *City Council of New Bedford*, 326 Mass. 706, 707. All of the questions sought to be brought here by appeal arise out of the "supplementary findings and rulings" of the trial judge. But these findings and rulings are no part of the record on appeal. *Cressey* v. *Cressey*, 213 Mass. 191. *Powdrell* v. *DuBois*, 274 Mass. 106, 108. *Check* v. *Kaplan*, 280 Mass. 170, 174. *Sheehan Construction Co.* v. *Dudley*, 299 Mass. 48, 51. *Matter of Loeb*, 315 Mass. 191, 193–194. *Harrington* v. *Anderson*, 316 Mass. 187, 191–193. Even if the appeals from the "findings and rulings" be treated as appeals from an "order decisive of the case" they are not "founded upon matter of law apparent on the record." The appeals must therefore be dismissed.

We turn then to the exceptions, which are rightly here. From the bill of exceptions, which contains the "supplementary findings and rulings" just referred to and other rulings of law made during the course of the trial, the following appears. The petitioner and the intervener were candidates for the office of mayor at a municipal election

held in Fall River on November 6, 1951. The result made public by the city clerk showed that 23,293 votes were cast for the petitioner and 23,285 for the intervener. Upon a recount the respondent board credited the petitioner with 23,283 votes and the intervener with 23,284. A total of 362 protested ballots was introduced in evidence. These are incorporated in the bill of exceptions and are before us. There was no other evidence.

The "findings and rulings" of the judge are in substance these. The intention of the voter to vote for the petitioner appeared on 138 ballots, and an intent to vote for the intervener appeared on 122 ballots. On 9 ballots the intent of the voter could not be ascertained and they were treated as blanks. These results were in accordance with the determination of the respondent board. Of the ballots remaining an intent to vote for the petitioner was disclosed on 66 and on 27 others an intent to vote for the intervener appeared. These conclusions were at variance with those of the board. As to 9 ballots, which the board had treated as blanks, presumably because they contained identifying writings or marks, the judge determined that they did not contain such writings or marks and ought to be counted. Pursuant to these conclusions the judge credited the petitioner with 23,349 votes and the intervener with 23,311 votes.

"The petitioner, respondents and intervener duly saved exceptions to each adverse ruling of the court on the individual ballots and also . . . to the 'Supplementary Findings and Rulings.'"

The respondents' position is that the determination of the intent of the voter on the protested ballots was a question of fact and that the trial judge had no power to decide such a question. That power, it is argued, rests exclusively with the board rather than with the courts. In support of this contention the respondents direct our attention to G. L. (Ter. Ed.) c. 54, § 135, as appearing in St. 1943, c. 417, under which the recount was conducted. That section, so far as material, reads, "The registrars shall, when the recount is complete, enclose all the ballots in their proper

envelopes or containers, seal each envelope or container with a seal provided therefor, and certify upon each envelope or container that it has been opened and again sealed in conformity to law; and shall likewise make and sign a statement of their determination of the questions raised. . . . The envelopes or containers, with such statement, shall be returned to the city or town clerk, who shall alter and amend, in accordance with such determination, such records as have been found to be erroneous; *and the records so amended shall stand as the true records of the election . . .*" (emphasis supplied). Thus, it is argued, the courts lack the power to revise questions of fact determined by the board under the express wording of the governing statute. The respondents further contend that such questions of fact are essentially an executive or administrative function which the courts under our Constitution are prohibited from exercising. They concede, however, that the board's decision may be revised by the court as to matters of law. But, so runs the argument, that is not the situation here.

The question just outlined is raised by the respondents' exception to the refusal of the judge to rule "that, in a proceeding of this nature, the Superior Court has no power to alter or change the findings of fact made by the respondent registrars of voters."

The position of the intervener, on the other hand, is that the ascertainment of the voters' intent from the ballots was a question of fact and that in an appeal brought here under G. L. (Ter. Ed.) c. 213, § 1D, with a report of the evidence this court has the power and the duty to decide this question without regard to the findings made by the trial judge.

The question presented by these contentions is not new. In *Flanders* v. *Roberts,* 182 Mass. 524, the question for decision was whether the registrars of voters erred in counting 18 ballots for the Republican candidate for mayor in a municipal election. In each of the ballots there was a cross in the square opposite the blank space left for the insertion of a name of a candidate whose name was not printed on the ballot. This blank space was just below the name of

the Republican candidate for mayor. On each of the ballots
the voter had voted by a cross in the proper square for the
Republican nominee for each one of all the other offices, 11
in number, on the ballot. The registrars of voters counted
the votes in the square opposite the blank space for the
Republican candidate. The case was heard by a single
justice who reported it without decision. This court de-
cided that the votes in question must be treated as blanks
and that the registrars of voters erred in counting them for
the Republican candidate. Concerning a contention similar
to that raised by the respondents here the court said, "The
second question raised by the respondents is the right of
this court to correct this error, and they have argued that
the court is neither a canvassing board nor a returning
board. That certainly is true, but still we are of opinion
that we can correct the error. We have jurisdiction to
correct errors of law appearing on the face of the papers
made by a returning board in counting a ballot as a vote
for a candidate for office which is not a vote for that candi-
date. The jurisdiction was established by *Strong, petitioner,*
20 Pick. 484, and it still exists unless it has been taken
away by statute. The respondents contend that it has
been taken away by R. L. c. 11, § 267.[1] Their contention
is that the words 'and the records so amended shall stand
as the true records of the election' prevent this court from
interfering to correct an error of law, if one was made, in
the recount of the votes" (page 527). The court, after
tracing the history of the statute, was of opinion that the
recount by the board was not final.

In none of the cases decided subsequent to the *Flanders*
case have we found any disapproval of the principle just
stated. The case has frequently been cited. *Ray* v. *Regis-
trars of Voters of Ashland,* 221 Mass. 223, 225. *Swan* v.
*Justices of the Superior Court,* 222 Mass. 542, 545. *Talbot* v.
*Registrars of Voters of Somerset,* 281 Mass. 284, 286. *Coughlin*
v. *Election Commission of Lowell,* 294 Mass. 434, 438. We
think that it correctly states the function that the courts

---

[1] This was the predecessor of G. L. (Ter. Ed.) c. 54, § 135, here involved.

may perform in a case like the present. It is true that in some of the later cases statements will be found to the effect that the determination made by the trial judge was one of fact and would not be disturbed if warranted by the evidence. Cases of this sort are *Brewster* v. *Sherman*, 195 Mass. 222, 225–226, *Andrews* v. *Registrars of Voters of Easton*, 246 Mass. 572, 576–577, *O'Brien* v. *Election Commissioners of Boston*, 257 Mass. 332, 338, *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 283–284, *Gilligan* v. *Registrars of Voters of Wilmington*, 323 Mass. 346, and *Banks* v. *Election Commissioners of Boston*, 327 Mass. 509, 513–514.

The trial judge in the present case was doubtless influenced by such expressions when he declined to rule that the court had "no power to alter or change the findings of fact made by the respondent registrars of voters." While, as indicated above, we are of opinion that only errors of law may be revised in cases of the sort here involved, the denial of the respondents' request did them no harm in the circumstances. The question for the judge to decide was whether there was error of law in the manner in which the ballots were counted by the board. That question was to be determined from what appeared on the face of the ballots inasmuch as the only evidence before him consisted of the ballots. *Flanders* v. *Roberts*, 182 Mass. 524, 525. What the judge did was to determine the legal effect to be given to the written documents (the ballots) before him. When he arrived at conclusions that differed from those of the board he was correcting errors of law. That he may have regarded his action as revising findings of fact is not material. The important thing is what he did rather than how he characterized it. What he did was not essentially different from what this court did in the *Flanders* case. There the report contained descriptions of the questioned ballots and the court arrived at conclusions different from those of the registrars of voters. Fundamentally the question in these cases is the same whether the error be very plain or less so. The difference is one of degree.

It remains to consider whether the rulings of the judge with respect to the protested ballots were right. Before discussing them in more detail a statement of the general principles applicable to cases of this sort is appropriate. In the construction of the election laws the principle running through our decisions is that the will of the voters, if it can be determined with reasonable certainty, must be given effect. If the ballot, considered in the light of the character and location of the mark and conditions attendant upon the election, fairly indicates the voter's intent, the vote should be counted in accordance with that intent, provided the voter has substantially complied with the requisites of the election law. The voter is not to be disfranchised because of minor irregularities. Where, however, the ballot is marked in such a way as to leave the intent of the voter in the realm of conjecture, the vote should not be counted. See, for example, *Flanders* v. *Roberts,* 182 Mass. 524; *Ray* v. *Registrars of Voters of Ashland,* 221 Mass. 223, 225; *Beauchemin* v. *Flagg,* 229 Mass. 23; *O'Brien* v. *Election Commissioners of Boston,* 257 Mass. 332, 338; *Parrott* v. *Plunkett,* 268 Mass. 202; *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271, 276–280; *Coughlin* v. *Election Commission of Lowell,* 294 Mass. 434.

Guided by these principles we have carefully examined each of the 362 protested ballots and agree with the rulings of the trial judge except as to 38 ballots,[1] 23 of which, according to his rulings, were to be counted for the petitioner and 15 for the intervener. In our opinion the 38 ballots just referred to should have been treated as blanks, as, except in 6 instances, the board determined. On most of them the intent of the voter could not be ascertained with reasonable certainty. The remainder contained identifying marks in violation of G. L. (Ter. Ed.) c. 54, § 80. See *Hall* v. *Barton,* 290 Mass. 476.

Of the remaining 324 ballots the decision of the judge agreed with that of the board in 263 instances. Notwith-

---

[1] These ballots bear the following exhibit numbers: 15, 48, 59, 65, 73, 82, 86, 96, 126, 155, 208, 221, 223, 227, 236, 251, 257, 300, 333, 334, 335, 336, 337, 338, 339, 340, 343, 345, 347, 348, 349, 350, 351, 355, 358, 359, 360, 361.

standing the contentions of the intervener we perceive no error in the rulings of the judge touching these ballots. The respondents rightly do not challenge these rulings. As to the 61 ballots[1] in which the rulings of the judge differed from the determination of the board we likewise find no error of law. A discussion of all of these rulings would not be profitable. In general the ballots involved fall into the following categories:

(1) On some ballots, the intersection of the lines of the cross made by the voter was close to the printed lines which separate the voting squares. Though the ends of the cross extended beyond the printed lines, the location of the cross itself could be determined with sufficient certainty. *Andrews* v. *Registrars of Voters of Easton*, 246 Mass. 572, 577. Compare *Coughlin* v. *Election Commission of Lowell*, 294 Mass. 434, 437.

(2) Other ballots contained imperfect crosses or check marks in the squares opposite the names of the candidates. While these marks do not conform with G. L. (Ter. Ed.) c. 54, § 77, enough appears upon inspection of the ballot to disclose the intent of the voter. *Coughlin* v. *Election Commission of Lowell*, 294 Mass. 434, 437. *Gilligan* v. *Registrars of Voters of Wilmington*, 323 Mass. 346, 349.

(3) In addition to the names of the candidates for mayor, the ballot contained, under separate designation, the names of candidates for the school committee and for the city council. Some ballots were defective in that the voters attempted to vote for a larger number of candidates for the latter two offices than was permissible, but such irregularity does not vitiate a proper expression of preference for the office of mayor. "If a voter marks more names than there are persons to be elected to an office · . . . his ballot shall not be counted for *such office*" (emphasis supplied). G. L. (Ter. Ed.) c. 54, § 106.

(4) On some ballots, there were crosses in the square

[1] Exhibits A, 7, 8, 9, 10, 11, 12, 13, 14, 25, 27, 35, 44, 56, 57, 60, 64, 71, 72, 75, 76, 80, 95, 100, 105, 142, 150, 169, 206, 219, 235, 241, 244, 246, 249, 256, 258, 260, 261, 279, 286, 287, 294, 299, 302, 307, 316, 317, 318, 319, 320, 321, 324, 325, 327, 328, 331, 352, 353, 354, 356.

opposite the name of one candidate and erasures or pencilled obliterations of marks in other squares. It could not be said that these ballots failed to indicate the intent of the voter with requisite clarity. See *Coughlin* v. *Election Commission of Lowell*, 294 Mass. 434, 437.

(5) In many instances, the voters' preference was properly designated by a cross in the voting squares, but there were tears, marks and writings of various descriptions on the ballots. On a few, the voters indicated their choice for a candidate in the appropriate manner and also inserted the name of that candidate in the blank spaces at the end of the list of candidates. On others, the voters obliterated some printed names with pencil marks or large crosses, or separated their choices in the voting squares with vertical lines. Of themselves, these irregularities did not identify the voters, and in the light of their casual character and their dissimilarity, we think, as the trial judge impliedly ruled, they were not intended by the voter to be distinguishing or identifying marks within G. L. (Ter. Ed.) c. 54, § 80, and c. 56, § 25, as appearing in St. 1946, c. 537, § 11. See *Hall* v. *Barton*, 290 Mass. 476.

We have not attempted to classify all the irregularities which appear on the protested ballots. Most of them fall into the above groupings and those that do not do not require separate discussion.

While, as stated above, we have disagreed with the rulings of the trial judge with respect to 38 ballots, the result is not changed. When the vote as determined by the judge is adjusted by treating these ballots as blanks the result would be that the petitioner has received 23,326 votes and the intervener 23,296. The exceptions of the respondents and of the intervener must therefore be overruled; those of the petitioner are dismissed. All of the appeals are dismissed.

*So ordered.*