JOHN T. MUNN *vs.* FRED DABROWSKI & others.[1]

Berkshire.    September 18, 1956. — November 28, 1956.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN,
& WHITTEMORE, JJ.

*Elections.   Law or Fact.   Practice, Civil,* Election case.   *Public Officer.*

In an election case where the only evidence before the trial court was
certain ballots protested on a recount, the proper counting of such
ballots according to what appeared on their face was a matter of law.
[43]

The mere fact that many ballots cast at an election each contained, be-
sides a cross against the name of one of the candidates for an office,
an erased or obliterated cross against the name of another candidate
did not justify a conclusion that a fraud had been perpetrated, and
the ballots should be counted for the indicated candidate.  [44–45]

From an examination of the face of protested ballots in an election case,
certain of them should be counted for the indicated candidate where
the intent of the voters could be ascertained with reasonable certainty,
despite sundry irregularities such as the marking of a circle or zero
against the names of candidates other than the one of the voter's choice,
against whose name he marked a cross [45]; the fact that the lines
of a cross started in the box opposite a candidate's name met and
crossed on the line at the bottom of the box [45]; the use of a check
mark instead of a cross [46]; the marking of a rough "Y" instead
of a cross [47]; the marking of an arabic numeral "1" instead of a
cross against the name of a candidate in literal compliance with in-
structions on the ballot to "Mark One" [47]; and the marking of
a cross over a check mark [47–48].

A statement printed in pencil by a voter on his ballot at a town election,
with reference to a question submitted to the voters on the ballot as
to placing the office of superintendent of streets under civil service,
"Only if civil service rulings are adhered to.  The police-naming
has been a disgrace," constituted an identifying mark in violation of
G. L. (Ter. Ed.) c. 54, § 80, and required that the entire ballot be
counted as a blank.  [46–47]

The fact that a voter wrote in a name in a write-in space on his ballot
for a certain office and marked a cross opposite that name, and then
obliterated both the name and the cross did not constitute an identify-
ing mark within G. L. (Ter. Ed.) c. 54, § 80, disqualifying the entire
ballot, and it should be counted in favor of a candidate for another
office against whose name the voter clearly marked a cross.  [48]

[1] The town clerk and the board of registrars of voters of the town of Adams.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Berkshire and ordered transferred to the Superior Court on April 7, 1955.

The case was heard by *Nagle*, J.

*Edmund R. St. John, Jr.*, for the petitioner.

*John N. Alberti*, (*Andrea F. Nuciforo* with him,) for the respondent Dabrowski.

COUNIHAN, J. This action comes here as the result of a dispute arising out of an election in the town of Adams on March 7, 1955, in which the petitioner Munn and the respondent Dabrowski were candidates for the office of selectman. There were four other candidates. The original count of ballots by the election officers gave Munn 1,656 votes and Dabrowski 1,654. The votes for other candidates were scattered. Following a recount pursuant to G. L. (Ter. Ed.) c. 54, § 135, as appearing in St. 1943, c. 417, as amended, the registrars of voters declared that Dabrowski had received 1,652 votes and Munn 1,650 votes.

Thereupon Munn brought this petition for a writ of mandamus against Dabrowski, the town clerk, and the registrars of voters, seeking to have Munn declared the duly elected selectman. The petition was originally brought in the Supreme Judicial Court and by order was transferred to the Superior Court where it was tried before a judge of that court. In his answer Dabrowski, after denying allegations of the petition, by way of further answer asked the court to review the findings and rulings of the registrars of voters on certain ballots which he had protested at the recount.

After hearing the judge filed a memorandum of "Findings, Rulings and Order for Judgment" in which he properly made rulings as matter of law on all of the disputed ballots. *Kane* v. *Registrars of Voters of Fall River*, 328 Mass. 511, 516–518. He ordered that judgment be entered directing a writ of mandamus to issue commanding the registrars of voters to amend the records of the recount to show that Munn received 1,654 votes and Dabrowski 1,653 votes and that Munn be declared duly elected as a selectman. Both

Munn and Dabrowski claimed exceptions to the rulings of the judge. The parties having been unable to agree upon a consolidated bill of exceptions, the action comes here upon two bills of exceptions, one filed by each of the principal parties.

The only evidence before us is the certificate of the town clerk and the registrars as to the result of the recount and forty-four protested ballots which were introduced as exhibits and are numbered 1 to 44, inclusive. These ballots will be hereinafter referred to by their respective numbers as exhibits. Of these ballots the judge ruled that thirty-four should have been counted for Munn, five for Dabrowski, and five as blanks. No exception was taken to the ruling of the judge that ballot numbered 24 was a blank, so this ballot is not before us. Munn has waived his exceptions to the rulings of the judge on ballots numbered 8 and 19 and Dabrowski has waived his exceptions to the rulings of the judge on ballots numbered 12 and 20. We need consider therefore only the remaining thirty-nine ballots which are the subject of the exceptions.

At the outset of our discussion of these exceptions we deem it appropriate to repeat what was recently said in *Kane* v. *Registrars of Voters of Fall River*, 328 Mass. 511, at pages 517–518: ". . . we are of opinion that only errors of law may be revised in cases of the sort here involved . . . . The question for the judge to decide was whether there was error of law in the manner in which the ballots were counted by the board. That question was to be determined from what appeared on the face of the ballots inasmuch as the only evidence before him consisted of the ballots. . . . Before discussing them [the exceptions] in more detail a statement of the general principles applicable to cases of this sort is appropriate. In the construction of the election laws the principle running through our decisions is that the will of the voters, if it can be determined with reasonable certainty, must be given effect. If the ballot, considered in the light of the character and location of the mark and conditions attendant upon the election, fairly indicates the

voter's intent, the vote should be counted in accordance
with that intent, provided the voter has substantially com-
plied with the requisites of the election law. The voter is
not to be disfranchised because of minor irregularities."
See cases cited.

Dabrowski challenged twenty-eight ballots, being num-
bered 1, 2, 3, 4, 5, 6, 9, 10, 11, 13, 14, 15, 16, 18, 21, 22, 27,
28, 29, 32, 35, 36, 37, 38, 39, 40, 41, and 42, because in each
instance a cross had been made against the name of another
candidate for selectman and then erased or obliterated and
another cross appeared against the name of Munn. In
twenty-two such instances the cross which was erased or
obliterated appears to have been made against the name of
one Mann, another candidate for selectman, which immedi-
ately preceded the name of Munn on the ballot. In three
other instances the erased or obliterated cross appears to
have been made against the name of one Williams, another
candidate, which immediately followed the name of Munn
on the ballot. In three other cases a cross had apparently
been made against the name of other candidates and then
erased or obliterated. The judge ruled that all of these
ballots be counted for Munn. There was no error because
we think that the intent of the voter was plainly expressed.
Dabrowski, however, urges us to overrule *Kane* v. *Registrars
of Voters of Fall River*, 328 Mass. 511, where it was said at
pages 519–520, "On some ballots, there were crosses in the
square opposite the name of one candidate and erasures
or pencilled obliterations of marks in other squares. It
could not be said that these ballots failed to indicate the
intent of the voter with requisite clarity. See *Coughlin* v.
*Election Commission of Lowell*, 294 Mass. 434, 437." Coun-
sel for Dabrowski would have us adopt a rule that where
many ballots show signs of erasure or obliteration the court
should conclude and rule that fraud has been perpetrated.
We decline to adopt such a rule. We are unwilling to sub-
stitute for the presumption of regularity a presumption of
fraud. Counsel in his brief concedes that a presumption
exists that public officials are honest and discharge their

duties with good faith and integrity. See *Kelley* v. *School Committee of Watertown,* 330 Mass. 150. There was no evidence before the judge except the ballots. In the absence of evidence to the contrary we must conclude that all markings on a ballot were made by the voter.

Ballot numbered 7 shows a cross opposite the name of Walter J. Donovan, the only candidate for moderator. In the box opposite the blank space for a write-in candidate there appears a small circle. In the box opposite the name of Dabrowski there is a cross, and a small circle appears opposite the name of Clermont, another candidate for selectman, whose name appears on the ballot just below the name of Dabrowski. Similar circles appear in the boxes opposite the names of candidates for other offices and in the box opposite the space for a write-in candidate where the voter had made a cross against the name of an unopposed candidate for that office. The judge ruled that this ballot was a blank. We are of opinion that this was error. Whatever may be thought of the voter's intelligence, we do not believe that the intent of the voter was left to conjecture or surmise. He made a clear unmistakable cross against the name of Dabrowski. The circle apparently was a zero by which he expressed his intention not to vote for the candidate against whose name it appeared or for a write-in candidate. We think it plain that the voter intended to vote for Dabrowski and his vote should be so counted.

Ballot numbered 17 is marked throughout with small crosses. The cross in the box against the name of Dabrowski is small and barely a completed one. This cross was similar to all the other crosses on the ballot. Enough appears, however, to warrant the ruling of the judge that this vote should be counted for Dabrowski. There was no error.

On ballot numbered 23 the voter started both lines of the cross within the box opposite the name of Dabrowski and these lines appear to meet and cross on the horizontal line at the bottom of the box. The judge ruled this a vote for Dabrowski. There was no error. The intent to vote for Dabrowski is clear.

On ballot numbered 25 the voter marked his ballot by making a check mark opposite the names of candidates for the first four offices to be voted for and a candidate for another office, and on ballot numbered 31 another voter made a similar mark against the name of the candidate for selectman and the candidate for assessor for whom he intended to vote. Against the names of the candidates for the seven other offices to be voted for the voter first referred to placed a cross against the name of the candidate of his choice. For selectman each voter made a check mark against the name of Munn on his ballot and no mark of any kind appeared against the name of any other candidate for that office. The judge ruled that both of these ballots should be counted as blanks. "The requirement as to marking a cross in the square opposite the name of the candidate (G. L. [Ter. Ed.] c. 54, § 77) is directory and not mandatory." *Gilligan* v. *Registrars of Voters of Wilmington,* 323 Mass. 346, 348–349. We do not think that other language in the opinion in that case requires the consistent use of a cross or a check mark on a particular ballot if on the whole the intent of the voter is made clear. We think that ballot numbered 31 should be counted for Munn.

On ballot numbered 25, as on all other ballots here under consideration, a two part question relative to placing the office of superintendent of streets under civil service was submitted to the voters. This question appeared on the second page of the ballot. Opposite the boxes for voting on this question and at the bottom of a vacant space on the third page, to which an arrow pointed, there appears the following printed in pencil, "Only if Civil Service Rulings are adhered to. The Police-naming has been a disgrace." Dabrowski asserts that this printed matter constitutes a distinguishing or identifying mark on the ballot in violation of G. L. (Ter. Ed.) c. 54, § 80, and for this reason the ballot should not be counted. The judge ruled that this ballot should be counted as a blank, presumably because the pencilled printed matter constituted an identifying or distinguishing mark on the ballot. There

was no error.  The printed matter was frivolous, immaterial and served to identify the ballot or the voter.  Such a practice is not to be condoned.  Compare *Hall* v. *Barton,* 290 Mass. 476.

On ballot numbered 26 there appears opposite the name of Munn a mark which is described by Dabrowski as a crude "Y."  While the left line of the mark does not intersect the right line so as to make a complete cross, no mark appears against the name of any other candidate for selectman.  Enough appears, we think, to indicate the intent of the voter to vote for Munn.  The judge so ruled and we find no error.

Ballot numbered 30 was marked in an unusual manner. At the top of the section containing the name or names of candidates to be voted for there appeared printed instructions as to the manner of voting.  For moderator they read "Moderator — For One Year    Mark One"; for selectman they read "Selectman — For Three Years    Mark One"; and similarly for other town offices except where more than one candidate could be voted for they read "Mark Two," "Mark Three," and "Mark 10."  The voter literally followed the instructions for in cases where only one candidate was to be voted for he marked in the box opposite the name of a candidate the Arabic numeral "1." Likewise where he had a right to vote for more than one candidate he placed a numeral "2," "3," or "10" against the names of the respective candidates he apparently intended to vote for.  Thus it appears that he marked the numeral "1" in the box against the name of Munn for selectman.  There was no mark against the name of any other candidate for that office.  While here again we may question the intelligence of the voter in marking his ballot in this manner, it is unmistakably plain that he intended to vote for Munn.  The judge was correct in ruling that this ballot should be counted for him.

On ballot numbered 33 the voter made a check mark against the name of the only candidate for moderator, and a similar check mark against the name of Dabrowski for

selectman.   The voter then, apparently in doubt as to the correct manner of voting, superimposed a cross on each check mark and finished by making a cross against the names of the candidates for other offices.   No mark appears against the name of any other candidate for selectman. The judge correctly ruled this ballot to be a vote for Dabrowski.

On ballot numbered 34 the voter made a perfect cross opposite the name of Munn for selectman.   The section just below that in which the candidates for selectman appeared contained the names of candidates for assessor for a three year term, and the one below that contained the names of candidates for assessor for a two year term.   (This, it was explained at the argument, was because an election was required to fill an unexpired term on account of the death of an assessor.)   The voter marked a cross against the name of one Gravel for assessor for a three year term and in the write-in space for the same office he wrote in the name of "Leonard Turgeon" and made a cross against it. Turgeon was a candidate for assessor for the two year term and the voter made a cross against his name for that office. At some time, apparently confused by the selection of an assessor for two different terms and desiring in any event to vote for Turgeon for the two year term, the voter obliterated the write-in vote for Turgeon for the three year term by drawing pencil marks through the name of Turgeon and the cross.   Dabrowski argues that inserting the name of Turgeon in the write-in space and then obliterating it constituted a distinguishing or identifying mark on the ballot which should have thrown out the entire ballot.   We do not agree.   It was said in *Hall* v. *Barton,* 290 Mass. 476, at page 481, "Handwriting alone might be sufficiently distinctive in certain conditions, although if the name of a candidate is written in a blank space as expressly permitted by G. L. (Ter. Ed.) c. 54, § 42, it could not be an identifying mark . . . ."   The judge correctly ruled this ballot a vote for Munn.

On ballot numbered 43 there appears a mark opposite

the name of Munn which may be taken for a "V." No mark appears against the name of any other candidate for selectman. The judge ruled this ballot a blank. We are of opinion that this was error. The ballot should be counted for Munn.

Ballot numbered 44 presents a problem similar to that presented by ballot numbered 30 which we have already discussed. The voter made a perfect cross opposite the name of Munn for selectman and there was no mark of any kind against the name of any other candidate for that office. In voting for other offices the voter used Arabic numerals similar to those which appear on ballot numbered 30. We have no doubt that the vote was intended for Munn.

The petitioner's exceptions to the rulings of the judge on ballots numbered 31 and 43 are sustained and the exception of the respondent Dabrowski to the ruling on ballot numbered 7 is sustained. All other exceptions are overruled. It follows that Munn should be credited with two additional votes and Dabrowski with one additional vote.

Judgment is to be entered commanding the registrars of voters to credit Munn with 1,656 votes and Dabrowski with 1,654 votes. G. L. (Ter. Ed.) c. 231, § 124.

*So ordered.*