JOHN HEHN and MRS. J. W. ROBSON, Also Known as VEVA M. ROBSON, Plaintiffs and Respondents,

*v.*

AMOS M. OLSON, JOHN A. DIX, C. F. ANDERSON, GERALD W. WOLFF, F. N. SCHIFF, KENNETH H. HARSTAD, and MRS. ANTON KONIG, as Members of the Board of Trustees of Dawson County High School, and as Members of High School Building District No. One; VADA TAYLOR, as Clerk of the Board of Trustees of Dawson County High School, and as Clerk of High School Building District No. One; FRANK N. SCHULTZ, JOHN J. MING and DON GIBSON, as County Commissioners of Dawson County, Montana, a Public Corporation, and Political Subdivision of the State of Montana; J. L. STARK, as County Assessor for Dawson County, Montana, a Public Corporation and Political Subdivision of the State of Montana, and OLGA EINARSON, as County Treasurer for Dawson County, Montana, a Public Corporation and Political Subdivision of the State of Montana, Defendants and Appellants.

No. 10134.

Submitted September 22, 1960. Decided December 30, 1960.

358 P.2d 431.

Russell C. McDonough, Glendive, argued orally for appellants.

Thomas J. Cavanaugh, Glendive, for respondents. Michael J. Hughes, Helena, argued orally.

MR. JUSTICE BOTTOMLY delivered the Opinion of the Court.

This is an appeal from the judgment and amended judgment entered in the above-entitled cause in favor of plaintiffs and against defendants, in the district court of the seventh judicial district of the State of Montana, in and for Dawson County High School Building District No. One bond election held on September 19, 1959, in which judgment and decree the district court ordered:

"It is ordered, adjudged and decreed that the Defendants, their attorneys, agents, servants and employees are hereby permanently and perpetually restrained and enjoined from issuing and selling any bonds as authorized by the Dawson County High School Building District No. One bond election held on the 19th day of September, 1959;

"It is further ordered, adjudged and decreed that the Defendants, their attorneys, agents, servants and employees are hereby permanently and perpetually restrained and enjoined from levying any tax assessment for the construction of a new

high school and for the purchase of any property for the site of said new high school;

"It is further ordered, adjudged and decreed that the defendants, their attorneys, agents, servants and employees are hereby permanently and perpetually restrained and enjoined from further collecting or attempting to collect any and all taxes levied or assessed by the defendants for the construction of the new high school in said High School Building District No. One of Dawson County, Montana, and from holding any election for the purpose of selecting any site for the said new high school and from collecting or attempting to collect a tax and assessment in this cause and from enforcing or attempting to enforce it in any way whatever;

"It is further ordered, adjudged and decreed that the defendants, their attorneys, agents, servants and employees are hereby permanently and perpetually restrained and enjoined from holding or causing to be held an election for the selection of a site for the said new high school as involved in this cause."

And in the amended judgment and decree, the court further ordered:

"It is ordered, adjudged and decreed that the bond election held on the 19th day of September, 1959, is null and void and of no effect."

This nullifying Order, Judgment, Decree and injunction is based entirely on the grounds and for the reason that the election irregularities charged in the complaint and proven by a preponderance of evidence and, in fact, admitted by the defendants, are in direct violation of the school election laws of the State of Montana; that said irregularities were fatal in the instant case, not merely immaterial.

Appellants contend there was a common sense compliance with the school election laws, and that such laws should be liberally construed.

This election was a school bond election, held by the board of trustees of Dawson County High School, which is also the

Board of Trustees of the High School Building District No. One of Dawson County, Montana, held September 19, 1959, to determine a very important matter to every taxpayer, as to whether or not the said Board of Trustees be authorized to issue bonds in the amount of $1,600,000 bearing interest at a rate not to exceed six percent per annum, during a period not exceeding twenty years. The proceeds from the sale of said bonds to be used in erecting and equipping a new high school, and for the purchase of a site for said high school.

The respondents contend that the mandatory provisions of the school bond election laws were not complied with by the judges and clerks of said election. This being a school bond election the laws enacted by our Legislature must be complied with. They are clear, concise and written in the English language, and are plain and unambiguous. This court has said many times when the intent of a law is clear and unambiguous, it means exactly what it says, and needs no interpretation. The school board election law is such a law and the necessary sections of the general election laws necessary for completion are also unambiguous.

The district judge was correct in his judgment and in ordering that the temporary restraining order and injunction be made permanent.

Either the sanctity of the ballot must be preserved and the legislative mandate enforced or we have no law and only agreement in this case as to how the election should be conducted. The legislature in mandatory language set forth the rules and the judges and clerks of school elections must follow them.

Section 75-1612, R.C.M.1947, provides:

"At every election held under this act, a poll-list shall be kept by the judges and clerk at each polling-place, and immediately after the close of the polls the judges shall count the ballots, and if there be more ballots than votes cast the judges must draw by lot from the ballots, without seeing them, sufficient number of ballots to make the ballots remaining correspond

with the number of votes cast. The clerk shall write down in alphabetical order in a poll-book provided for that purpose the name of every person voting at the time he deposits his ballot. There shall also be provided a tally-list for each polling-place; after the ballots have been counted and made to agree with the poll-list the judges shall proceed to count them. The clerk shall enter in the tally-list the name of every person voted for as trustee, and the term, and tally opposite his name the number of votes cast for him, and at the end thereof set down in a column provided for that purpose the whole number of votes he received. The judges and clerk shall sign a certificate to said tally-list, setting forth the whole number of votes cast for each person or trustee, designating the term, and they shall verify the same as being correct, to the best of their knowledge, before an officer authorized to administer oaths. No informality in such certificate shall vitiate the election, if the number of votes received for each person can reasonably be ascertained from said tally-list. Said books and tally-lists shall be returned to the board of trustees of the district, who shall canvass the vote and cause the clerk of the district to issue a certificate of election to the person or persons elected, designating their term, a copy of which must be forwarded to the county superintendent of schools. School trustees are hereby authorized to administer oaths to judges of election.''

The requirements of this section were admittedly not complied with, but on the contrary, the judges and clerks in receiving the ballots at the close of the election adjourned, taking the ballots from the place where they were cast and the purported election held, to the office of the superintendent of the high school, where, according to the record they took the ballots from the box, turned them right side up, and placed all of the ''yes'' ballots in one pile and all of the ''no'' ballots in another separate pile, before the ballots were counted. Then, they disqualified sufficient of the ''no'' ballots so that the result was that the ''yes'' ballots carried, whereas, and where-

by, the above section says and commands in no uncertain terms that before the ballots are counted, the voted side must not be seen until the ballots are counted and compared with the list of voters, then they may proceed to count the "yes" and "no" ballots.

The foregoing holding of this election is an absolute contradiction and violation of the above statute, which is admitted. The foregoing violation is only one of the several violations which the district court pointed out. The judge of the lower court did not need to reach or consider the constitutional question raised in the lower court and on this appeal as the statutory requirements on the holding of a school bond election were not complied with. Therefore, we need not consider nor pass upon the constitutional question thereon raised. We will not prolong this opinion, as it would simply encumber the record. Suffice to say that upon the holding of another election, the board of trustees will see to it that the constitutional limitations and statutes will be complied with.

Because of the foregoing facts and circumstances which were brought out fully in the record, and which the district court interpreted correctly, we uphold its judgment in every particular, and in the rendering of the permanent injunction of which we approve. Therefore, the appeal is dismissed and the cause is remanded for compliance with this opinion. It is so ordered.

MR. JUSTICE ADAIR concurs.

MR. JUSTICE CASTLES specially concurring.

I concur in the result of Mr. Justice Bottomly's opinion, but wish to add my views:

This is an appeal from a judgment of the district court of the seventh judicial district in favor of the plaintiffs and against the defendants which judgment decreed that a school bond election of High School Building District No. One of Dawson County was null, void and of no effect. The judgment

also decreed that the defendants be permanently enjoined from issuing bonds, levying a tax assessment, attempting to collect any tax from a tax assessment, or holding an election to select a site for a new high school as a result of such bond election.

The action was brought by the plaintiffs who were taxpayers and residents of Dawson County residing in School Districts Nos. 1 and 36, against the defendants, who were the members of the board of trustees of Dawson County High School, the clerk of said board of trustees, the county commissioners of Dawson County, the county assessor of Dawson County, and the county treasurer of Dawson County. The litigation arose out of alleged irregularities in the conduct of an election to authorize a bond issue which was held on September 19, 1959. The bond issue was proposed for the purpose of providing funds for the construction and furnishing of a new high school.

The evidence adduced at the trial disclosed the following facts which are pertinent to this decision:

After the polls were closed the election officials separated the ballots into two piles — one pile of "no" ballots and one pile of "yes" ballots. Seven of the "no" ballots were disqualified because of irregularities in marking. The poll-list was checked with the ballots that were cast and it was found that there were seven more ballots cast than votes contained in the poll-list. However, with the disqualification of the seven "no" ballots the number of ballots counted balanced with the number of votes on the poll-list. It was stipulated that seven voters whose names were not on the poll-list were qualified to vote and did vote but the election clerks failed to put their names on the poll-list when they voted.

There was some confusion as to when the seven "no" ballots were actually disqualified. Mrs. Kalloch, a judge of the election, testified on direct examination that the ballots were divided into the two piles of "yes" and "no" ballots and then the number of ballots was compared to the number of votes in the poll-list, and it was found that there were seven more

ballots cast than votes contained in the poll-list. After this was determined seven of the "no" ballots were disqualified. However, on cross-examination she testified that the seven "no" ballots were disqualified as the election officials came to them in separating the ballots into the two piles. The testimony of Mrs. Olson, also a judge of the election, was very uncertain as to when the seven "no" ballots were disqualified, although at one point in her testimony she said they were disqualified as the election officials came to them when the votes were separated into the two piles. All of the testimony was to the effect that there was never a drawing by lot of seven ballots to make the number of ballots cast tally with the number of votes contained in the poll-list as required by R.C.M. 1947, § 75-1612.

The canvass of the vote resulted in the official tally of 772 votes for the proposition and 763 votes against the proposition. This was after seven ballots against the proposition were disqualified for irregularities in marking.

The sole issue raised by the defendants' two specifications of error is whether certain irregularities in the method used by the election officials in counting the votes made the results of the election void.

R.C.M. 1947, § 75-3913, provides in part, as to school bond elections, that "The bond election shall be conducted in the manner prescribed for the election of school trustees and return shall be made and canvassed in a similar manner."

R.C.M. 1947, § 75-1605, provides in part that "* * * The voting must be by ballot, without reference to the general election laws in regard to nominations, form of ballot, or manner of voting * * *." This section refers to the conduct of the elections for school trustees in second and third class school districts and also to bond elections in these school districts pursuant to § 75-3913. Upon oral argument it was stipulated that this section was applicable to the instant case.

In reference to the manner of counting the ballots in school

584

trustee and bond elections R.C.M. 1947, § 75-1612, provides, in part:

"At every election held under this act, a poll-list shall be kept by the judges and clerk at each polling-place, and immediately after the close of the polls the judges *shall count the ballots, and if there be more ballots than votes cast the judges must draw by lot from the ballots, without seeing them, sufficient number of ballots to make the ballots remaining correspond with the number of votes cast.*" Emphasis supplied.

The election officials in the instant case did not follow the directions of this statute in any respect. They divided the ballots into piles of "yes" and "no" ballots immediately upon completion of the voting and then determined that the number of ballots cast did not correspond to the number of votes contained in the poll-list. Seven of the "no" ballots were disqualified (whether this was done before or after the comparison between the number of ballots cast and the number of votes in the poll-list is in question), and the balance between the number of ballots cast and the number of votes contained in the poll-list was made.

As set forth above, § 75-1612 imposes the duty upon the election officials to use the method specified in that section to determine if the number of ballots cast corresponds to the number of votes contained in the poll-list. If the numbers do not correspond the election officials have the duty to draw by lot, without seeing them, the number of ballots required to make the two figures correspond. The ballots so drawn are not counted.

In the Montana case of Thompson v. Chapin, 64 Mont. 376, 209 P. 1060, this court held that the failure of election judges to require electors to sign the registry books before voting at a primary election was the fault of the judges and not of the electors and therefore the votes were legal and properly counted. However, in the course of the opinion it is stated, at p. 385, 209 P. at page 1062:

"* * * While it is true that irregularities invite a concealed fraud, yet, where the fault lies with the election officials rather than the elector, they should be disregarded, unless the statute expressly declares that the same is fatal to the election, *or unless they are such as to themselves change or render doubtful the result of the election."* Emphasis supplied. This language was quoted with approval in the later case of Atkinson v. Roosevelt County, 71 Mont. 165, 180, 227 P. 811.

It is nowhere provided that a failure on the part of the election officials to follow the provisions of § 75-1612 will be fatal to the election. Therefore, unless the failure to follow the statute would "change or render doubtful the result of the election" the election results must stand under the rule stated in Thompson v. Chapin, supra.

If the disqualification of all of the seven "no" votes was proper the result of the election would not be changed by the failure of the election officials to follow the statute, since there would still be a majority of votes in favor of the proposition. So it becomes necessary to consider whether all of the seven "no" votes were properly disqualified.

Montana's school trustee and school bond election laws contain no provisions allowing election officials to disqualify ballots. However, the *general* election laws have authority allowing election officials to disqualify certain ballots. This is found in R.C.M. 1947, § 23-1704, which provides:

"* * * and any ballot or parts of a ballot from which it is impossible to determine the elector's choice is void and must not be counted; if part of a ballot is sufficiently plain to gather therefrom the elector's intention, it is the duty of the judges of election to count such part."

In Peterson v. Billings, 109 Mont. 390, 96 P.2d 922, this court indicated that in general elections the intention of the voter is the most important element to be considered, and if the ballot plainly shows the intention of the voter it must be counted.

We realize that § 23-1704 and the case of Peterson v. Billings, supra, have reference to the *general* election laws of the State of Montana and do not involve school bond elections. However, even though § 75-1605 provides that the conduct of elections in second and third class school districts is "by ballot without reference to the general election laws in regard to nominations, form of ballot, or manner of voting" election officials must be governed by some rules in determining the validity of votes. We hold that the rule stated in § 23-1704, with reference to determining the validity of ballots in *general* elections should also apply to school elections. Therefore, a ballot should be counted in school elections if it is "sufficiently plain to gather therefrom the elector's intention."

In deciding this case, we find it necessary to consider the validity of only two of the "no" ballots that were disqualified by the election officials and that have been certified to this court as plaintiffs' exhibit 3.

The official ballots for this election, after setting out the instructions to voters and the proposition for which they were voting, had the following form:

(☐)  Bonds—Yes

(☐)  Bonds—No

One of the ballots had one faint diagonal line which the voter had attempted to erase in the square in front of the words "Bonds—Yes" and there was a distinct "X" marked in the square in front of the words "Bonds—No". Another one of the ballots apparently had an "X" which had been solidly marked over and obliterated by pencil in the square in front of the words "Bonds—Yes" and a distinct "X" marked in the square in front of the words "Bonds—No". Each of these two ballots were marked sufficiently plain to gather the elector's intention to vote "no" to the proposition and they should not have been disqualified but should have been counted against the proposition. Some of the cases from other jurisdictions following this rule concerning the treatment of erasures and

obliterations are Allen v. Fuller, 332 Ill. 304, 163 N.E. 675; Pye v. Hanzel, 200 Minn. 135, 273 N.W. 611; Austin v. Anderson, 279 Ky. 742, 132 S.W.2d 56; Aura v. Brandt; 211 Minn. 281, 1 N.W.2d 381; Munn v. Dabrowski, 335 Mass. 41, 138 N.E.2d 570.

We find it necessary to hold only that the two ballots mentioned above should have been counted against the proposition, however, we would also like to point out that three of the other five disqualified ballots seem quite clear in evidencing an intention on the part of the voter to vote against the proposition. Each of these three ballots have a distinct ''X'' marked in the square in front of the words ''Bonds—No'' although they each also have words such as ''for an addition'' written on them.

As we have already noted the canvass of the vote resulted in 772 votes in favor of the proposition and 763 votes against the proposition. In addition to this the evidence showed that seven other ballots against the proposition were disqualified so there was a total number of 1,542 ballots cast in the election counting the disqualified ballots. However, the poll-list showed a total of only 1535 votes or seven less than the total number of ballots that were actually cast in the election. If the election officials would have followed the requirement of § 75-1612 they would have counted the ballots first, determined that there were seven more ballots cast than votes contained in the poll-list and drawn out seven ballots by lot without looking at them. It would have been possible for the officials to draw out seven ''yes'' ballots. If this had been done the proposition would not have carried since there would have been 772 minus 7 (the seven ''yes'' ballots drawn out by lot) or 765 votes *for* the proposition and 763 plus 2 (because of the erroneous disqualification of at least two of the ''no'' ballots) or 765 votes *against* the proposition, resulting in a tie vote. Therefore, the failure of the election officials to follow the provisions of section 75-1612 together with the erroneous disqualification of

two "no" ballots could have changed or rendered the result of the election doubtful. The lower court was correct in holding that the election was null, void and of no effect.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN:

We concur in the result reached in Mr. Justice Bottomly's opinion and also concur in the reasoning expressed in the concurring opinion of Mr. Justice Castles.