JAMES WOOLSEY, GRAHAM WOOLSEY, ROBERT BROWNLEE, AND FRITZ ELLISON, PLAINTIFFS AND APPELLANTS, v. GARCE M. CARNEY, COUNTY SUPERINTENDENT OF SCHOOLS OF SWEET GRASS COUNTY, MONTANA; BOLAND ·CLARK, HARRY ANDERSON AND BOB RULE, TRUSTEES OF SCHOOL DISTRICT #29, DEFENDANTS AND RESPONDENTS.·

No. 10439

Submitted December 3, 1962. Decided February 15, 1963.

378 P.2d 658.

Lee Overfelt, Billings, for appellants.

O. J. Paulson, Big Timber, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a summary judgment in the above entitled cause in favor of the defendants, in the district court of the sixth judicial district of the State of Montana.

We are not here concerned with procedural matters, but rather whether the district judge properly ruled on facts presented to the court. Prior to Judge McKinnon's finding for the defendants, in this matter, District Judge George Allen had held a hearing on an order to show cause at which hearing evidence was taken. Due to the fact that he had a jury term he was unable to hear the motion for summary judgment and had to call in another district judge, Judge McKinnon, who had not had the benefit of the hearing of the facts. These facts are fairly well agreed upon. The voters of two adjoining rural school districts, 23 and 29, located in the southern part of Sweet Grass County held an election on August 7, 1961, to determine whether or not they should consolidate their school districts. This was the second election held, there having been a previous election on the same issue, on July 1, 1961, at which time the consolidation had failed to carry. All of the necessary statutory procedures were followed up to the day of election. The notice of the election was published and posted showing the date and the hours of the election, and judges were properly appointed. All went well until the day of the election when a series of events occurred, which could serve as the basis for a Gilbert-Sullivan operetta. Due to an oversight the ballots failed to arrive at the two school election

houses where the elections were held, so the election judges made up their own ballots placing on each a box marked ''FOR'' and ''AGAINST''. There was, however, no explanation of FOR what or AGAINST what, even though the statute requires the ballots be marked FOR consolidation and AGAINST consolidation. It was in the election judges' opinion unnecessary to put the word consolidation due to the fact they thought everybody knew what they were voting for. It is undenied that over five ballots were cast by people who were never present at the election. This was explained by the election judges by saying that they let some persons vote before the polls opened at the legal hour of 2:00 o'clock on the 7th due to the inconvenience to these persons having to come to the voting place during the hours of the said election. The hours of election were from 2:00 p.m. to 6:00 p.m. Too, one judge cast a vote of her husband who she said was busy on the ranch, though when examined she could only explain that she was certain, as only a wife can be, that her husband was FOR consolidation. In school district 29, after the judges had closed the polls and due to an objection to the system of voting absentee, the election judges withdrew five FOR votes, leaving a total of fifty votes, there having been prior to withdrawal fifty-five votes cast. This left a total vote of fifty with twenty-six FOR and twenty-four AGAINST. It would appear that in this district there were more than five absentee voters, probably eight, and it is unknown how the other three would have voted, but had three more FOR vote ballots been withdrawn the election there would have failed. To further complicate the voting in district 29 it is alleged that two voters who said that they were against consolidation appeared at the polls and were refused the right to vote even though they said they had arrived before 6:00 p.m. by their watches. The judges explained this by saying they opened and closed the polls ''by their time.''

To further complicate the picture in the adjoining district

23, the voting was sixteen FOR and fifteen AGAINST, but at the time of the hearing on the order to show cause one lady testified she thought she was voting ''For keeping the school, not FOR CONSOLIDATION.'' So had her vote been cast as she thought it was her vote would have changed the election, making sixteen AGAINST consolidation and fifteen FOR consolidation.

Several Montana Statutes are involved here and we must determine whether having failed to follow the statutes on consolidated school districts the defendants may still prevail due to the failure on the part of the plaintiff to pursue thereafter an appeal through administrative proceedings rather than going to the court.

Section 75-1813, R.C.M.1947, covers consolidated districts, procedure in the event of consolidation, and amount of debt. Subsection 2 states as follows:

''(2) The votes at such election shall be by ballot, which shall read 'For consolidation' and 'Against consolidation.' The presiding officer at such election shall, within ten (10) days thereafter, certify the result of the vote to the county superintendent of the county in which the district lies.''

There can be no question, based on the facts above set forth, that the ballots prepared by the judges at the time of the election failed to comply with the statute, and that therefore any election held was on its face null and void. The testimony presented at the time of the order to show cause clearly showed that in at least one instance a lady who voted thought she was voting for keeping her schoolhouse rather than for consolidation, and that this vote in district 23 changed the outcome of the election in that district.

Concerning the withdrawal by the judges of the five votes in question section 75-1612, R.C.M.1947, is controlling. It is in part:

*Poll and tally list, certificate of judges and canvass of the votes.* At every election held under this act, a poll list shall be

kept by the judges and the clerk at each polling place, and immediately after the close of the polls the judges shall count the ballots, and if there be more ballots than votes cast the judges must draw by lot from the ballots, without seeing them, sufficient number of ballots to make the ballots remaining correspond with the number of votes cast."

All of the testimony was to the effect that there was never a drawing by lot of the five ballots in question to make the number of ballots cast tally with the number of votes contained in the poll list as required by the above statute.

This court in its most recent pronouncement on school election matters in a case of Hehn v. Olson, 138 Mont. 576, 358 P.2d 431, said this in quoting from Thompson v. Chapin, 64 Mont. 376, 209 P.1060:

"* * * [w]hile it is true that irregularities invite a concealed fraud, yet, where the fault lies with the election officials rather than the elector, they should be disregarded, unless the statute expressly declares that the same is fatal to the election, or *unless they are such as to themselves change or render doubtful the result of the election.*"

It should be noted here that failure on the part of the election officials to follow the provisions of section 75-1612, would not be fatal to the election *unless the failure to follow the statute* would *"change or render doubtful the result of the election."*

Here, clearly, the testimony is that in district 23 one woman would have voted AGAINST rather than FOR had the word "consolidation" been on the ballot. Too, the improper procedure on the part of the officials in withdrawing five votes in district 29 has created such a situation in that district that it is doubtful that the result of the election would have been as it is recorded had they properly withdrawn the ballots according to statute.

The respondents contend that however illegal the election may have been that the appellants cannot prevail due

to their failure to follow the provisions of section 75-1518, which fixes the duties of the county superintendent of schools with regard to school controversies. This section provides as follows:

"He shall decide all matters in controversy arising in his county in the administration of the school law or appealed to him from the decision of school officers or boards. An appeal may be taken from his decision, in which case a full written statement of the facts, together with the testimony and his decision in the case, shall be certified to the state superintendent for his decision in the matter, which decision shall be final, subject to adjudication or the proper legal remedies in the state courts."

Judge McKinnon apparently relied upon this section of our codes, found for the county superintendent and against the appellants. However, the holding of an election, and the procedures to be followed by all concerned, is not an administrative matter coming under the provisions of section 75-1518, but rather a function controlled by our statutes concerned with elections. The holding of elections on school matters whether voting for the school trustees, school levy, a school bond or school consolidation, is not an administrative function within the provisions of section 75-1518, where for some reason, the election is contested.

This court recently said in Hehn v. Olson, 138 Mont. 576, 358 P.2d 413: "However, even though § 75-1605 provides that the conduct of elections in second and third class school districts is 'by ballot without reference to the general election laws in regard to nominations, form of ballot, or manner of voting' election officials must be governed by some rules in determining the validity of votes. We hold that the rule stated in § 23-1704, with reference to determining the validity of ballots in *general* elections should also apply to school elections."

In this case, as in the above-quoted Hehn v. Olson, case,

482

in an election controversy in a school district the county officials should have been guided by the election laws governing election controversies rather than by the school law upon which they relied.

Had this case been a case under section 75-1522, wherein the county superintendent had the power to consolidate a school district administratively, the case most certainly would have been a case wherein the protesting parties would have had to have followed the administrative procedure set forth in section 75-1518. This court in a series of cases commencing with State ex rel. School Dist. No. 86, Richland County v. Trumper, 69 Mont. 468, 222 P. 1064; Peterson v. School Board of School District No. 1, Cascade County, 73 Mont. 442, 226 P.670; State ex rel. McDonnell v. Musburger, 111 Mont. 579, 111 P.2d 1038, has held that the superintendent, acting under the statute giving her the administrative power to abandon the school district, which is section 75-1522, R.C.M.1947, will be sustained in her decision if the parties contesting the abandonment or consolidation do not follow the proper administrative appeal procedures set forth in section 75-1518. There is, however, a difference in her exercising an administrative function given to her by the legislature and the function of determining the legality of the procedure followed settling a vote dispute which is not contemplated in an election within the statute, upon which she relied.

The judgment of the district court is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, DOYLE and ADAIR, concur.