CHARLES W. CHAMBERLAIN & others *vs.* BOARD OF REGISTRARS OF VOTERS OF HARWICH.

Barnstable. November 6, 1970. — December 30, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Elections.*

Where it appeared that the ballot at a town election contained a question whether the town should accept the provisions of G. L. c. 31, § 48, and a summary of that section immediately following which stated that acceptance thereof would place members of the police force, "excepting the Chief of Police," under civil service, and that a voter clearly marked on his ballot a cross within the "Yes" box opposite the ques-

tion, but added the words "including chief" below the summary, the writing of such additional words was an intentional irregularity which qualified the meaning of the vote and invalidated it, and required that it be counted as a blank.

PETITION for a writ of mandamus filed in the Superior Court on March 27, 1969.

The case was heard by *Brogna*, J.

*Roger A. Jackson* for the petitioners.

*Richard J. Cain*, for the respondent, submitted a brief.

REARDON, J. This is a petition for a writ of mandamus brought by the petitioners, citizens of Harwich, against the respondent Board of Registrars of Voters of that town, alleging that certain votes cast in a town election on March 3, 1969, were improperly counted. A judge of the Superior Court made findings, rulings and an order in favor of the respondent. The record indicates the following.

The controversy involves a single ballot on a question put to the voters as to whether the town of Harwich should accept G. L. c. 31, § 48, which provides for the placing of the police force under the provisions of the civil service laws.[1] The board, after a recount of the votes, determined that there were 763 votes favoring adoption of the proposal, 762 against it, and sixty-six blanks. The contested ballot, which is an exhibit in the case, indicates that the voter placed a cross clearly within the "Yes" box on the question. In addition, however, he wrote the words "including chief" below the summary appended to the question. Upon these facts the judge found and ruled "that the voter clearly indicated his intention to vote 'Yes' . . . [and] that by

---

[1] The exact form of the question was as follows: "Shall the Town of Harwich accept the provisions of Section 48 of Chapter 31 of the General Laws, a fair and concise summary of which appears below:    Yes (   )
                                                                          No  (   )
Summary: Town of Harwich, excepting the Chief of Police, upon acceptance of Section 48, Chapter 31 of the General Laws, shall be subject to the provisions of Chapter 31 of the General Laws (Civil Service) and appointment to the police force shall be made from an eligible list prepared by the Director of Civil Service as provided in Section 47A of Chapter 31. The status of all incumbents of positions in the regular or permanent police force in the Town of Harwich at the time of acceptance of this section shall be determined as provided in section 47A of Chapter 31 of the General Laws insofar as it applies to the official service."

358 Mass. 536

writing the words as he did below the summary, he did not indicate that he was not in favor of the precise question upon which he had voted 'Yes' "; nor was the voter's "Yes" vote "contingent on the inclusion of the Chief." He continued, "I find, rather, that the voter might have realized that under Section 48 of Chapter 31 it provides in Paragraph 5 thereof that the present Chief of Police of Harwich, because he had served more than three years, might be subject to the provisions of Chapter 31 notwithstanding any provisions of law exempting him. I also find that the voter was indicating his approval of the question even if the Chief of Police were not excepted as indicated in the summary. I therefore order that the . . . [respondent] count the questioned ballot as a 'Yes' vote and make a return of vote which certifies that the question carried." The petitioners have appealed the judge's action under G. L. c. 213, § 1D.

General Laws c. 54, § 106, contains the guidelines on whether to count a vote and, if so, how to count it. Although the statute is framed in terms of elections for office, the principle it promulgates has been applied in numerous cases dealing with contested elections of all sorts. A typical formulation is found in the case of *O'Brien* v. *Election Commrs. of Boston*, 257 Mass. 332, 338: "The cardinal rule for guidance of election officers and courts . . . is that if the intent of the voter can be determined with reasonable certainty from an inspection of the ballot, in the light of the generally known conditions attendant upon the election, effect must be given to that intent and the vote counted in accordance therewith, provided the voter has substantially complied with the requisites of the election law; if that intent cannot thus be fairly and satisfactorily ascertained, the ballot cannot rightly be counted." Distinguishing marks on a ballot, made intentionally and with dishonest purpose to identify the voter, will invalidate a ballot. G. L. c. 54, § 80. *Hall* v. *Barton*, 290 Mass. 476, 478. *Kane* v. *Registrars of Voters of Fall River*, 328 Mass. 511, 520. However, if the voter complies substantially with the election laws he is not to be disenfranchised on account of a mere technicality

or a minor irregularity. *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271, 277. *Contakos* v. *Election Commn. of Lowell,* 331 Mass. 254, 256–257. *Munn* v. *Dabrowski,* 335 Mass. 41, 43–44.

The trial judge was empowered to decide whether there was error of law in the counting of the contested ballot. *Kane* v. *Registrars of Voters of Fall River, supra,* at pp. 516–517. However, just as "[t]here is no principle that where reasonable men might differ in interpreting the voter's intent, the decision of the returning board must stand" (*Contakos* v. *Election Commn. of Lowell, supra,* at p. 257), so the decision of the trial judge, as a conclusion of law, may be freely reviewed by us on appeal.

It appears to us that there was error below in the finding that the intent of the voter was to vote "Yes" to the question on the ballot. The conclusions of the judge to that effect appear to be conjectural. The sole basis given for them is the judge's speculation that the voter "might have known" that the chief of police "because he had served more than three years, might be subject to the provisions of Chapter 31 notwithstanding any provisions of law exempting him."

Our decision in this case is supported by the only other case in which we dealt with a ballot containing superfluous comment. In *Munn* v. *Dabrowski,* 335 Mass. 41, 46–47, among the votes contested was one on the question whether the office of superintendent of streets should be placed under civil service. This question appeared on the second page of the ballot. Opposite the boxes for voting on this question and at the bottom of a vacant space on the third page, to which an arrow pointed, there appeared the following printed in pencil, "Only if Civil Service Rulings are adhered to. The Police-naming has been a disgrace." The trial judge ruled this ballot should be counted as a blank, and we upheld him on the ground that "[t]he printed matter was frivolous, immaterial and served to identify the ballot or the voter. Such a practice is not to be condoned." Of course, the facts in the *Munn* case were not quite the facts

in this case. In the *Munn* case, on the disputed ballot neither the "No" nor the "Yes" box was checked and the comment was more extended and more tangential to the question put than was that on the contested ballot here. However, we believe that the issue posed in both cases reveals that gratuitous editorial comment appearing on ballots is to be discouraged. Such commentary may more often than not be categorized as a distinguishing mark under G. L. c. 54, § 80, and even where it cannot be, the vote should not be counted if the comment has the effect of qualifying the position taken by the voter when he marked his "X."

This is not a case of an unclear marking of the ballot. It is rather a case where, having voted, the voter launches into some qualification of the meaning of his vote. The result is an intentional irregularity on the ballot which, although minor, is to be distinguished from the inadvertent or careless irregularity upon which a court will only with reluctance disenfranchise a voter. We, therefore, hold that where a voter by comment upon the choice given to him places upon the election officials the task of determining whether they can ascertain with required certainty what his intent was upon the choice given, his ballot is to be counted as a blank. There is no reason why the smooth operation of elections should be impeded by a burden caused by voters who choose to act outside the framework of the ballot. A voter is entitled only to register his position on alternatives as they are presented to him and not to indicate possible other individual preferences. The legal rationale for this rule is simply that a voter who changes the proposition put to him has not "substantially complied with the requisites of the election law," as required by our cases. *Kane* v. *Registrars of Voters of Fall River*, 328 Mass. 511, 518. *Contakos* v. *Election Commn. of Lowell*, 331 Mass. 254, 256.

It follows that the judge ruled erroneously as a matter of law and that the contested vote should be counted as a blank.

The order of the judge is reversed. Judgment is to enter for issuance of the writ commanding the respondent to cer-

tify that upon recount the vote on the question submitted to the voters was Yes 762, No 762, blank 67, and that the question did not carry.

*So ordered.*